### IN THE

# SUPREME COURT

#### OF

# MINNESOTA.

---

## APRIL TERM, 1873.

---

### PETER S. LE CLAIR

*vs.*

### THE FIRST DIVISION OF THE ST. PAUL AND PACIFIC RAILROAD CO.

A party excepting to a charge of the court as too broad, should ask for a more specific instruction if it is apprehended that the jury might be misled by the generality of the instruction, applied to the facts.

Exceptions to the general rule that one servant cannot recover damages from his employer for injury occasioned by the negligence of a fellow servant.

A railroad company is liable to a servant or employee for an injury occasioned by the use and employment of defective machinery, where the

VOL. XX.—2

defect was unknown to the servant, and his negligence did not contribute to the injury; and if the servant knew of the defect and did not inform the proper person, he cannot recover.

Refusal to set aside a verdict on the ground that the same is not justified by the evidence.

The plaintiff brought this action in the district court for Ramsey county, to recover damages for injuries sustained by him while employed in the service of the defendant. It is alleged that the injuries were caused to plaintiff by being crushed between a tender and a car which he was attempting to couple together, in the course of his duty, without any negligence on his part, solely by reason of the defendant's negligence in allowing the coupling arrangements to be so improperly constructed, and so out of repair and order, that the said car and tender could not be coupled, of which negligence on the part of the defendant the plaintiff was ignorant. The answer put in issue these allegations, and the cause was tried before a jury. In submitting the cause to the jury, the court, after stating it to be a well settled principle of law, " that one servant cannot recover damages from his employer for injury occasioned by the negligence of a fellow servant," added: " In the general rule above stated, however, there are two exceptions; the first is where the employer is at fault in not employing safe and competent servants; the second is where the employer is at fault in employing defective machinery." The court also charged " that it was for the jury to say, whether that was a safe and proper coupling arrangement," concerning which there was conflicting testimony. The defendant requested the court to charge and instruct the jury that the evidence in the action was insufficient to warrant a verdict for the plaintiff, which was refused. Defendant duly excepted to the exceptions to the general rule above stated,

LeClair v. The First Division of the St. Paul and Pacific Railroad Co.

and to the other portion of the charge above quoted, and to the refusal to charge as requested.

The jury rendered a verdict for the plaintiff for the sum of $6,500.00. Defendant moved for a new trial, which was denied, *pro forma*, and from the order denying such motion an appeal is taken to this court.

BIGELOW, FLANDRAU & CLARK, for Appellant.

DAVIS & O'BRIEN, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The instructions of the court to the jury were sufficiently favorable to the defendant. The court stated, " that to the general rule, that one servant cannot recover damages from his employers for injuries occasioned by the negligence of his fellow servants, there are two exceptions : the first is where the employer is at fault in not employing safe and competent servants ; the second is where the employer is at fault in employing defective machinery." The defendant excepted to this statement, and in support thereof contends that the charge was too broad, because though the defendant may have employed defective machinery and been at fault in so doing, still if the plaintiff knew it and did not object, he could not recover.

The proposition is correct, in itself, though plaintiff's contributory negligence in any given case may prevent his recovery. It is sufficient to say, assuming that defendant states the law correctly, that not only should it have asked for more specific instruction if it had apprehended that the jury might be misled by the generality of instruction applied to the facts, but the court in the course of its charge expressly instructed the jury " that if this coupling arrangement was defective, and plaintiff knew of it and did not notify the proper person,

he could recover." The other grounds of defendant's exceptions fall under the head that the verdict is not justified by the evidence.

The defendant also excepted to the statement by the court in its said charge, that " it was for the jury to say whether that was a safe and proper coupling arrangement." It insists that this was error, because " there was no evidence to the contrary." If not, the court also erred in refusing to give the instructions requested by defendant, viz.: " that the evidence was insufficient to warrant a verdict for plaintiff." The point may, therefore, be considered in connection with the remaining ground upon which defendant moved for a new trial in the district court, and insists in this court, that such new trial should have been granted, (the point that the damages were excessive not being urged here) viz.: that the verdict is not justified by the evidence.

The plaintiff was injured in endeavoring to couple together an engine and car. The defendant's theory of the case is, that the coupling arrangements were perfect, if properly managed, but that " the smoke, steam and snow were flying in blinding clouds, and they were all in a hurry to make up the train, get their dinners and go home. The plaintiff, inspired by the confidence which long experience in such matters turns into recklessness, stepped in between the tender and the car, as he had probably done thousands of times before, and not calculating on the effect of the steam, smoke and snow that filled the space and blinded him, he failed to give the link the right direction, and met with one of those unfortunate accidents which are incident to the hazards of his profession."

It may have been so, certainly, but the plaintiff testifies that " when he stepped in there (in between the tender and car) there were no obstructions to my sight, nor when I

LeClair v. The First Division of the St. Paul and Pacific Railroad Co.

attempted to effect the coupling." He also testified, " I pressed the link down as far as I could; it struck above the hole on the car bumper; I could not have coupled it with that link, because the car was too low; I did not know of the difficulty when I stepped in; I supposed I could make the coupling when I went in there; I could see well enough to couple; I had acquired a competent knowledge of the proper way to couple cars;     *     *     I was prudent and careful when coupling; I saw just how that thing struck and which way it went; it went away from me; it slipped to one side;     *     *     the link struck above the side." Here certainly is competent evidence, if the jury believed it, reasonably tending to prove that the failure of the link to enter the hole resulted not from any failure of plaintiff to give it the right direction, nor from his improper adjustment of perfect machinery, but because the car was too low, and of the credit to be given to it, they are the exclusive judges.

In accordance with the settled rule of this court, we must take it to have been the fact, that such was the cause of the failure to couple, unless such a conclusion would be most manifestly and palpably against the weight of the evidence (12 *Minn.* 308.) The fact that bears hardest against it is that the other end of the car had been coupled to this engine with the same link the same morning and drawn with it all day; and there being evidence tending to show that the height of the car was the same at both ends, if the defendant had proved that such coupling was effected in the ordinary manner, *i.e.*, in the manner in which plaintiff was attempting to do the work, the inference as to the cause of his failure would have been strong indeed. But while the defendant's assistant superintendent testifies that there was "no difficulty in coupling it" in the morning, he neither did it, nor saw it done, and those who did are not produced.

The plaintiff's evidence is to the effect that to couple at his end it would have been necessary to lift the draft iron of the car, which one man could not do. When this is shown to the jury, the presumption, until those who did it are produced, is (supposing both ends of the car to be of the same height,) not that the plaintiff is not to be believed as to the cause of *his* failure to couple, but that the coupling at the other end was done in the only way in which he says it could be done. At all events, the jury were certainly at liberty to draw that inference, from the failure of the defendant to show how it *was* done.

The same remarks applies to the evidence of the assistant superintendent, that there was no difficulty in coupling on after the accident,—and to that of the engineer, that the coupling was done in five minutes; not over ten. There was no trouble in coupling 17 on to the car. I only came back with the engine once and the coupling was made. They did not make the coupling, nor see it made, and those who did are not called to say how it was done, nor with what kind of link, while a delay of five or ten minutes in making it, points to something out of the ordinary mode of effecting it.

The testimony of the officers of the road, that there was no difficulty in coupling this engine to any car on the road " with the ordinary appliances," " with the crooked links in use on the road," is entitled to weight, but when weighed against positive testimony that with one of the " ordinary appliances" and " crooked links" it could not be done with respect to *this* car without the assistance of another man in lifting the draft iron of the latter, a decision against such a conclusion is certainly not most manifestly and palpably against the weight of the evidence.

On the whole, so far as this point is concerned, the verdict of the jury must be taken to have settled it, that the cause of

plaintiff's failure to make the connection was that the car was too low. The defendant, then, had provided on this occasion an engine and car, which could not, with this link at least, be coupled together in the ordinary way. This circumstance, of itself, was evidence tending to show that it was not a safe and proper arrangement for the purpose. There is no ground, therefore, for the defendant's exception aforesaid to the judge's charge, that whether it was thus safe and proper, or not, was for the jury. They have decided this question also in the negative, and on the principle above stated we cannot say that their verdict is not justified by the evidence.

It is admitted that if the engine was too high to couple with *this* link and had been furnished with no other, the case would be one of defective or insufficient machinery furnished —" the insufficiency of the machinery would be so patent," in the defendant's opinion, that plaintiff would be bound to know it and decline the service. " Being an expert in the business, nothing but negligence and recklessness could induce him to attempt to make a coupling with a car to which the link was not adapted."

But the defendant contends that the engine was supplied with perfect machinery adapted to the coupling of every kind of cars thereto. Upon this point it relies upon the testimony of its superintendent. He testifies that " there are five, six or seven different kinds of coupling links used on defendant's road. They vary from a straight link, eight or ten inches long, to a long coupling bar, three feet long. There are a great variety of crooked links, so that they would vary in line from one inch to six inches ; also, one coupling bar that is made with a joint, so that it will describe a half circle. Some links are round, some square, some flat —all sorts of links." " They (conductors) are instructed to carry a set of links, chains, ropes and other fixings. These

links and other things are ordinarily carried in all trains." "When a conductor was employed, I would sit down and tell him what he was employed to do. I give them to understand, as fully as possible, their responsibility; and to see that his caboose, or baggage car, had all the things necessary for the train. The caboose on a freight train, and the baggage car on a passenger train, is the place for the tools on regular trains; and on special trains they are instructed to take everything that is necessary, tools, links, chains, &c.; so that if anything breaks, they will have another to put right in. Plaintiff received from me such instructions. They were to report if anything was lacking, so that it could be furnished to them. A conductor is sent to the master mechanic to get his caboose and stock of tools at first. Then the conductor sees that the stock is kept up. The engine has its outfit, which is separate from the outfit of the train. The train has its own outfit in its caboose or baggage car. Rule 20 of the printed instruction, refers to the tools I have mentioned, links, chains, &c. It is as follows: Rule 20. Conductors will see that the fireman keeps the lamps, lanterns and train tools in proper order, and that no waste of the same be allowed." Plaintiff also testified that he received these instructions testified to by Delano, when he first went on the road.

Is it to be understood from this testimony that every train is furnished with *all* the different kinds of coupling links in use on defendant's road? That depends on what the superintendent means by a "set of links," and was for the jury to decide. As to these curved links, moreover, the witness Munroe, the defendant's assistant master mechanic, testifies that "the offset in a bent link is generally about two and one-half inches. There is a uniform rule for bending these links; it may vary a quarter of an inch;" testimony which directly

contradicts the statement of the superintendent that " they would vary in line from one to six inches."

Plaintiff testifies, " this same link had not been on this engine all the time I ran her; we used to break them occasionally ; a crooked link was the best for that engine, and we had ordinarily run it with just such links ; we always carried extra links, straight and crooked ones; it is the conductor's business to see that there are extra links on a train ; we sometimes carry them on the engine and sometimes on the caboose, but we had a tool box on this engine and carried them there."

The plaintiff's was a freight train; the cars of which are higher than passenger cars, and he swears that he never violated his instructions received from the superintendent as above. If upon this evidence, the jury should have been of the opinion. that the plaintiff's engine when he first took charge of it was furnished by defendant only with straight links, and curved links like the one in question, with an offset of about two and one-half inches, which were not adapted to be used on that engine, with the bumper it then had, in connection with the car in question, and that such stock had simply been kept good, we could not say that such a conclusion was not justified by the evidence.

Then, as engines are to go wherever ordered, if the jury should have found that this was not a safe and proper coupling arrangement, we could not say that *such* a conclusion was not justified by the evidence. If engines are to go wherever ordered, and to couple on to any car defendant has, its duty to the lives of its employees, most assuredly, is to have those engines fitted with the proper appliances for doing it safely. Yet here was an engine not provided with the means and appliances for safely coupling on to this car, to which, nevertheless, it is ordered to be coupled. There the employer is at fault in not providing proper machinery, and is liable,

unless this plaintiff's own negligence caused or contributed to the injury. The defendant contends that plaintiff was in charge of this snow plow train. The plaintiff that Moore was in charge, and plaintiff subordinate to him. The evidence would justify the jury in finding either way, and therefore in finding that the latter was the fact. The plaintiff, at any rate, did not make up the train, and so far as the facts on this occasion bear upon the point of actual knowledge on his part that the engine would not couple on to the car, there is nothing to militate against his statement that he did not know of the dicffiulty when he stepped in. He also swears that he was ignorant at the time of any difference in height between freight and passenger cars. If he neither knew, nor ought to have known, that the link in place on the engine was not just as well adapted to couple to this passenger car as to a freight car, he was guilty of no negligence.

The defendant suggests that he might have ascertained at the time by his eye, while the engine was approaching, whether or not the height of the bumpers corresponded. But less than an inch would make all the difference in the world. The defendant in view of its theory as to the blinding clouds of snow, steam and smoke calls for superhuman accuracy of vision. It must be taken after verdict, on the evidence, that as matter of fact he knew of no difficulty.

The court below instructed the jury that " there is another rule of law that, if a servant using defective machinery, understands the nature of it, and goes on using it without objection, his employers are not liable for any injury sustained by him, by reason of such defect. If this coupling arrangement was defective, and plaintiff knew of it, and did not notify the proper person, he cannot recover." This was certainly sufficiently favorable to the defendant.

The case does not require us to pass upon its correctness,

as a whole, because from the nature of the duty undertaken by the plaintiff, if he either knew, or ought from matters within his knowledge to have known that the engine could not be coupled to the car in the ordinary way, it was certainly negligence in him which contributed to the injury to attempt to couple them in that way.

It has been recently held in England (*Holmes v. Clarke*, 6 *Hurlstone & Norman*, 348 ; 7 *ib.* 937,) that knowingly continuing in the use of defective machinery is not *per se* negligence. " Many cases," it is said, " might be put in which a servant might reasonably incur the risk, instead of abandoning the service." The plaintiff's knowledge is only a fact in the case, to be taken into consideration by the jury, with all the other facts and circumstances in determining the question whether the plaintiff has himself helped to bring about the accident.

So, where it was the duty of a servant of a railroad company to uncouple the cars of a train, and this could not easily be done while the train was still, and he in endeavoring to uncouple them while the train was in motion stepped between the cars and met with an injury caused by a want of repair of the road bed of the railroad, the supreme court of Massachusetts, while holding it to be a case of injury arising from a failure by the company to provide suitable instruments and means for doing the work, held, that the court could not rule, as matter of law, that he was careless, but should submit the question to be determined by the jury though he continued in the employment of the company after he knew of the defect. *Snow vs. Housatonic Railroad Co.*, 8 *Allen*, 441. " His continuance in the employment did not necessarily and inevitably expose him to danger." We give no opinion upon the point because the case before us does not require it. This is a case to which the words of Cockburn, chief justice, in the case in

7 *Hurlstone & Norman*, are applicable. " No doubt a defect thus arising in machinery may be such that no man of ordinary prudence would run the hazard of working on it." The question here, therefore, is whether the plaintiff ought to have known that the link could not enter the draft iron of the car without the lifting of the latter. This was a question of fact for the jury. The defendant says, it was plaintiff's duty to know whether the particular link in the bumper of the engine at any given time was sufficiently curved to fit the height of the car that was to be coupled. But this rests on the assumption that he was in charge of this special train as conductor, and not, as plaintiff insists that he was subordinate to Moore, and ordered to put himself under Moore's direction for the purpose of running the snow plow, and this, as before remarked, is also a question of fact upon which the jury might on the evidence find either way.

If the plaintiff had been one of the two brakemen on his freight train who went with him on this trip, it would not be contended that, aside from any special knowledge, he would not have the right to presume that the train as it was, and the tender as it was then and there equipped was a safe and proper piece of machinery. The engine as equipped was adapted to freight cars, and plaintiff had run it only in connection with a freight train. As conductor of a freight train, it is not contended that it was his duty to make himself familiar with the relative height of passenger trains, and what, if any difference there might be in the proper coupling arrangements. As to other knowledge or means of knowledge of plaintiff, it appears that plaintiff was first employed by the company in 1864 or 1865 as a brakeman, and after eighteen months was made a conductor of a working train, and so continued, with the exception of two months, till he left the company's employment, and remained out of it for

Christian et al. v. The First Division of the St. Paul and Pacific R. R. Co.

two years, returning to it in June, 1871; for the two months referred to he was conductor of a passenger train, and this was about two years before he quit the first time. This passenger car came upon the road after the expiration of said two months. His duty as conductor of the passenger train did not require him to know the relative height of freight and passenger cars. And if the jury were of opinion that the circumstance of his having thus been a conductor of a passenger train would not affect him with knowledge of any such difference, we cannot say that such a conclusion is not justified by the evidence. The case has been very fully argued on the evidence, and we cannot undertake to consider it more in detail.

Upon a careful consideration of it and of defendant's argument therein, we are unable to discover any ground justifying us in ordering a new trial.

Order appealed from affirmed.