### HOUGH v. RAILWAY COMPANY.

1. The general rule exempting the common master, whether a natural person or a corporation, from liability to a servant for injuries caused by the negligence of a fellow-servant recognized and considered.

2. To that rule there are well-defined exceptions, one of which arises from the obligation of the master not to expose the servants, when conducting his business, to perils or hazards against which they may be guarded by proper diligence upon his part.

3. Therefore, although his liability to them is not that of a guarantor of the absolute safety or perfection of the machinery or other apparatus provided for their use, he is bound to exercise the care which the exigency reasonably requires in furnishing such as is adequate and suitable.

4. A railroad company is liable when its officers or agents who are invested with a controlling or superior duty in that regard are, in discharging it, guilty of negligence, from which injury to an innocent party results.

5 If the servant of such a company who has knowledge of defects in machinery gives notice thereof to the proper officer, and is promised that they shall be remedied, his subsequent use of it, in the well-grounded belief that it will be put in proper condition within a reasonable time, does not necessarily, or as matter of law, make him guilty of contributory negligence. It is a question for the jury whether, in relying upon such promise, and using the machinery after he knew its defective or insufficient condition, he was in the exercise of due care. The burden of proof, in such a case, is upon the company to show contributory negligence.

ERROR to the Circuit Court of the United States for the Western District of Texas.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. James Turner* for the plaintiff in error, and by *Mr. John C. Brown* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

Plaintiffs in error, the widow and child of W. C. Hough, deceased, seek in this action to recover against the Texas and Pacific Railway Company damages, compensatory and exemplary, on account of his death, which occurred in 1874, while he was in its employment as an engineer.

In substance, the case is this : —

The evidence in behalf of the plaintiffs tended to show that the engine of which deceased had charge, coming in contact with an animal, was thrown from the track, over an embankment, whereby the whistle, fastened to the boiler, was blown or knocked out, and from the opening thus made hot water and steam issued, scalding the deceased to death ; that the engine was thrown from the track because the cow-catcher or pilot was defective, and the whistle blown or knocked out because it was insecurely fastened to the boiler; that these defects were owing to the negligence of the company's master-mechanic, and of the foreman of the round-house at Marshall ; that to the former was committed the exclusive management of the motive-power of defendant's line, with full control over all engineers, and with unrestricted power to employ, direct, control, and discharge them at pleasure; that all engineers

were required to report for orders to those officers, and under their directions alone could engines go out upon the road; that deceased knew of the defective condition of the cow-catcher or pilot, and, having complained thereof to both the master-mechanic and foreman of the round-house, he was promised a number of times that the defect should be remedied, but such promises were not kept; that a new pilot was made, but, by reason of the negligence of those officers, it was not put on the engine.

The evidence in behalf of the company conduced to show that the engine was not defective; that due care had been exercised, as well in its purchase as in the selection of the officers charged with the duty of keeping it in proper condition; that the defective cow-catcher or pilot was not the cause of the engine being thrown from the track; that the whistle was securely fastened, and did not blow out, but the cab being torn away, the safety-valve was opened, whereby the deceased was scalded; that if any of the alleged defects existed, it was because of the negligence of the master-mechanic and the foreman of the round-house, for which negligence the company claims that it was not responsible.

The principal question arising upon the assignments of error requires the consideration, in some of its aspects, of the general rule exempting the common master from liability to one servant for injuries caused by the negligence of a fellow-servant in the same employment.

"The general rule," said Chief Justice Shaw, in *Farwell* v. *Boston & Worcester Railway Corporation* (4 Metc. (Mass.) 49), "resulting from considerations as well of justice as of policy, is, that he who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal contemplation the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master. They are perils incident to the service.

and which can be as distinctly foreseen and provided for in the rate of compensation as any other."

To prevent misapprehension as to the scope of the decision, he deemed it necessary, in a subsequent portion of his opinion, to add : " We are far from intending to say that there are no implied warranties and undertakings arising out of the relation of master and servant. Whether, for instance, the employer would be responsible to an engineer for the loss arising from a defective or ill-constructed steam-engine ; whether this would depend upon an implied warranty of its goodness and suffi- ciency, or upon the fact of wilful misconduct or gross negli- gence on the part of the employer, if a natural person, or of the superintendent or immediate representative and managing agent, in case of an incorporated company, — are questions on which we give no opinion."

As to the general rule, very little conflict of opinion is to be found in the adjudged cases, where the court has been at liberty to consider it upon principle, uncontrolled by statutory regulations. The difficulty has been in its practical applica- tion to the special circumstances of particular cases. What are the natural and ordinary risks incident to the work in which the servant engages ; what are the perils which, in legal contemplation, are presumed to be adjusted in the stipulated compensation ; who, within the true sense of the rule, or upon grounds of public policy, are to be deemed fellow-servants in the same common adventure or undertaking, — are questions in reference to which much contrariety of opinion exists in the courts of the several States. Many of the cases are very wide apart in the solution of those questions.

It would far exceed the limits to be observed in this opinion to enter upon an elaborate or critical review of the authorities upon those several points. Nor shall we attempt to lay down any general rule applicable to all cases involving the liability of the common employer to one employé for the negligence of a co-employé in the same service. It is sufficient to say, that, while the general doctrine, as stated by Chief Justice Shaw, is sustained by elementary writers of high authority, and by numerous adjudications of the American and English courts, there are well-defined exceptions, which, resting as they clearly

do upon principles of justice, expediency, and public policy, have become too firmly established in our jurisprudence to be now disregarded or shaken.

One, and perhaps the most important, of those exceptions arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master. To that end the master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the latter. It is implied in the contract between the parties that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation ; among which is the carelessness of those, at least in the same work or employment, with whose habits, conduct, and capacity he has, in the course of his duties, an opportunity to become acquainted, and against whose neglect or incompetency he may himself take such precautions as his inclination or judgment may suggest. But it is equally implied in the same contract that the master shall supply the physical means and agencies for the conduct of his business. It is also implied, and public policy requires, that in selecting such means he shall not be wanting in proper care. His negligence in that regard is not a hazard usually or necessarily attendant upon the business. Nor is it one which the servant, in legal contemplation, is presumed to risk, for the obvious reason that the servant who is to use the instrumentalities provided by the master has, ordinarily, no connection with their purchase in the first instance, or with their preservation or maintenance in suitable condition after they have been supplied by the master.

In considering what dangers the servant is presumed to risk, the court, in *Railroad Company* v. *Fort* (17 Wall. 553, 557), said : " But this presumption cannot arise where the risk is not within the contract of service, and the servant had no reason to believe he would have to encounter it. If it were otherwise, principals would be released from all obligations to make rep-

arations to an employé in a subordinate position for any injury caused by the wrongful conduct of the persons placed over him, whether they were fellow-servants in the same common service or not. Such a doctrine would be subversive of all just ideas of the obligations arising out of the contract of service, and withdraw all protection from the subordinate employés of railroad corporations. These corporations, instead of being required to conduct their business so as not to endanger life, would, so far as this class of persons were concerned, be relieved of all pecuniary responsibility in case they failed to do it. A doctrine that leads to such results is unsupported by reason, and cannot receive our sanction."

A railroad corporation may be controlled by competent, watchful, and prudent directors, who exercise the greatest caution in the selection of a superintendent or general manager, under whose supervision and orders its affairs and business, in all of its departments, are conducted. The latter, in turn, may observe the same caution in the appointment of subordinates at the head of the several branches or departments of the company's service. But the obligation still remains to provide and maintain, in suitable condition, the machinery and apparatus to be used by its employés, — an obligation the more important, and the degree of diligence in its performance the greater, in proportion to the dangers which may be encountered. Those, at least, in the organization of the corporation, who are invested with controlling or superior authority in that regard represent its legal personality ; their negligence, from which injury results, is the negligence of the corporation. The latter cannot, in respect of such matters, interpose between it and the servant, who has been injured, without fault on his part, the personal responsibility of an agent who, in exercising the master's authority, has violated the duty he owes, as well to the servant as to the corporation.

To guard against misapplication of these principles, we should say that the corporation is not to be held as guaranteeing or warranting the absolute safety, under all circumstances, or the perfection in all of its parts, of the machinery or apparatus which may be provided for the use of employés. Its duty in that respect to its employés is discharged when, but only when, its

agents whose business it is to supply such instrumentalities exercise due care as well in their purchase originally, as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employés.

A leading case upon the question before us is *Ford* v. *Fitchburg Railroad Co.*, 110 Mass. 241. That was an action by an engineer to recover damages for injuries caused by the explosion of his engine, which was old and out of repair. His right to recover was disputed, upon the ground that the want of repair of the engine was due to the negligence of fellow-servants in the department of repairs.

But the court said: "The rule of law which exempted the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow-servants, does not excuse the exercise of ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risks of the master's negligence in this respect. The fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from that obligation. The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the employer may require." In a subsequent portion of the same opinion, the court said: "The corporation is equally chargeable, whether the negligence was in originally failing to provide, or in afterwards failing to keep its machinery in safe condition."

The same views, substantially, are expressed by Mr. Wharton in his Treatise on the Law of Negligence. The author (sect. 211) says: "The question is that of duty; and, without making the unnecessary and inadequate assumption of implied

warranty, it is sufficient for the purposes of justice to assert that it is the duty of an employer inviting employés to use his structure and machinery, to use proper care and diligence to make such structure and machinery fit for use." Again (sect. 212): "At the same time, we must remember that where a master personally, or through his representatives, exercises due care in the purchase or construction of buildings and machinery, and in their repair, he cannot be made liable for injuries which arise from casualties against which such care would not protect. It is otherwise if there be a lack in such care, either by himself or his representatives. The duty of repairing is his own; and, as we shall hereafter see, the better opinion is, that he is directly liable for the negligence of agents when acting in this respect in his behalf. If the master 'knows, or, in the exercise of due care, might have known,' that . . . his structures or engines were insufficient, either at the time of procuring them or at any subsequent time, he fails in his duty." Still further, in reference to the obligation upon the master to supply suitable machinery for working use (sect. 232 $a$): "It has sometimes been said that a corporation is obliged to act always by servants, and that it is unjust to impute to it personal negligence in cases in which it is impossible for it to be negligent personally. But if this be true, it would relieve corporations from all liability to servants. The true view is, that, as the corporation can act only through superintending officers, the negligences of those officers, in respect to other servants, are the negligences of the corporation."

The current of decisions in this country is in the same direction, as will be seen from an examination of the authorities, some of which are cited in the note at the end of this opinion.

It is, however, insisted that the defence is sustained by the settled course of decisions in the English courts. It is undoubtedly true, that the general doctrine of the immunity of the master from responsibility for injuries received by his servant from a fellow-servant in the same employment has, in some cases, been carried much further by the English than by the American courts. But we cannot see that, upon the

precise question we have been considering, there is any substantial conflict between them.   That question was not, as is supposed, involved, it certainly was not decided, in *Priestley* v. *Fowler*, 3 Mee. & W. 1.  The decision there was placed by Lord Abinger partly upon the ground that, in the "sort of employment especially described in the declaration [transporting goods of the master by one servant, in a van, conducted by another of his servants], . . . the plaintiff must have known as well as the master, and probably better, whether the van was sufficient, whether it was overloaded, and whether it was likely to carry him safely." But even in that case, although the court declared it was not called upon to decide how far knowledge upon the part of the master of vices or imperfections in the carriage used by the servant injured would make him liable, it was said: "He (the master) is, no doubt, bound to provide for the safety of the servant in the course of his employment, to the best of his judgment, information, and belief."

The question came before the House of Lords in *Paterson* v. *Wallace* (1 Macq. H. L. Cas. 748), and again, in 1858, in *Bartonshill Coal Co.* v. *Reid*, 3 id. 266.  In the last-named case, Lord Cranworth said that it was a principle, established by many preceding cases, "that when a master employs his servant in a work of danger he is bound to exercise due care in order to have his tackle and machinery in a safe and proper condition, so as to protect the servant against unnecessary risks."  This he held to be the law in both Scotland and England.  At the same sitting of the House of Lords, *Bartonshill Coal Co.* v. *McGuire* (3 id. 307) was determined.  In that case, Lord Chancellor Chelmsford delivered the principal opinion, concurring in what was said in the Reid case.  After referring to the general doctrine as announced in *Priestley* v. *Fowler*, and recognized subsequently in other cases in the English courts, he said: "In the consideration of these cases it did not become necessary to define with any great precision what was meant by the words 'common service' or 'common employment,' and perhaps it might be difficult beforehand to suggest any exact definition of them.  It is necessary, however, in each particular case to ascertain whether the fellow-

servants are fellow-laborers in the same work, because, although a servant may be taken to have engaged to encounter all risks which are incident to the service which he undertakes, yet he cannot be expected to anticipate those which may happen to him on occasions foreign to his employment. Where servants, therefore, are engaged in different departments of duty, an injury committed by one servant upon the other, by carelessness or negligence in the course of his peculiar work, is not within the exception, and the master's liability attaches in that case in the same manner as if the injured servant stood in no such relation to him."

Upon the same occasion, Lord Brougham, referring to the remark of a Scotch judge to the effect that an absolute and inflexible rule, releasing the master from responsibility in every case where one servant is injured by the fault of another, was utterly unknown to the law of Scotland, said: "But, my lords, it is utterly unknown to the laws of England also. To bring the case within the exemption, there must be this most material qualification, that the two servants shall be men in the same common employment, and engaged in the same common work under that employment." 3 id. 313.

An instructive case is *Clarke* v. *Holmes*, decided in 1862, in the Exchequer Chamber, upon appeal from the Court of Exchequer, 7 H. & N. 937. There, the plaintiff was employed by the defendant to oil dangerous machinery, and he was injured in consequence of its remaining unfenced. He had complained of the condition of the machinery, and the manager of the defendant, in the latter's presence, promised that the fencing should be restored. In the course of the argument, counsel for the defendant relied upon *Priestley* v. *Fowler*, claiming it to have decided that whenever a servant accepts a dangerous occupation he must bear the risk. He was, however, interrupted by Cockburn, C. J., with the remark, " That is, whatever is fairly within the scope of the occupation, including the negligence of fellow-servants; here, it is the negligence of the master." Crompton, J., also said : " It cannot be made part of the contract, that the master shall not be liable for his own negligence."

In the opinion delivered by Cockburn, C. J., it was said :

" I consider the doctrine laid down by the House of Lords in the case of *The Bartonshill Coal Co.* v. *Reid* as the law of Scotland with reference to the duty of a master, as applicable to the law of England also, namely, that when a servant is employed on machinery from the use of which danger may arise, it is the duty of the master to take due care, and to use all reasonable means, to guard against and prevent any defects from which increased and unnecessary danger may occur." Again, in the same opinion : " The rule I am laying down goes only to this, that the danger contemplated on entering into the contract shall not be aggravated by any omission on the part of the master to keep the machinery in the condition in which, from the terms of the contract, or the nature of the employment, the servant had a right to expect that it would be kept."

Byles, J. : " But I think the master liable on the broader ground, to wit, that the owner of dangerous machinery is bound to exercise due care that it is in a safe and proper condition. . . . The master is neither, on the one hand, at liberty to neglect all care, nor, on the other, is he to insure safety, but he is to use due and reasonable care. . . . Why may not the master be guilty of negligence by his manager or agent, whose employment may be so distinct from that of the injured servant that they cannot with propriety be deemed fellow-servants ? And if a master's personal knowledge of defects in his machinery be necessary to his liability, the more a master neglects his business and abandons it to others the less will he be liable."

To the same effect is the recent case of *Murray* v. *Phillips*, decided in 1876 in the Exchequer Division of the High Court of Justice. 35 Law Times Rep. 477.

It is scarcely necessary to say that the jury were not correctly informed by the court below as to the legal principles governing this case. It is impossible to reconcile the general charge or the specific instructions with the rules which we have laid down. They were, taken together, equivalent to a peremptory instruction to find for the company. The jury may have believed, from the evidence, that the defects complained of constituted the efficient proximate cause of the death of the

engineer; that such defects would not have existed had the master-mechanic and foreman of the round-house exercised reasonable care and diligence in the discharge of their respec tive duties touching the machinery and physical appliances supplied to employés engaged in running trains; and that the deceased was not chargeable with contributory negligence: yet, consistently with any fair interpretation of the charge, and the specific instructions, they were precluded from finding a verdict against the company.

One other question, arising upon the instructions, and which has been discussed, with some fulness, by counsel, deserves notice at our hands. It is contended by counsel that the engineer was guilty of such contributory negligence as to prevent the plaintiffs from recovering. The instruction upon that branch of the case was misleading and erroneous.

The defect in the engine, of which the engineer had knowledge, was that which existed in the cow-catcher or pilot. It is not claimed that he was aware of the insufficient fastening of the whistle, or that the defect, if any, in that respect, was of such a character that he should have become advised of it while using the engine on the road. But he did have knowledge of the defective condition of the cow-catcher or pilot, and complained thereof to both the master-mechanic and the foreman of the round-house. They promised that it should be promptly remedied, and it may be that he continued to use the engine in the belief that the defect would be removed. The court below seem to attach no consequence to the complaint made by the engineer, followed, as it was, by explicit assurances that the defect should be remedied. According to the instructions, if the engineer used the engine with knowledge of the defect, the jury should find for the company, although he may have been justified in relying upon those assurances.

If the engineer, after discovering or recognizing the defective condition of the cow-catcher or pilot, had continued to use the engine, without giving notice thereof to the proper officers of the company, he would undoubtedly have been guilty of such contributory negligence as to bar a recovery, so far as such defect was found to have been the efficient cause of the

death.   He would be held. in that case, to have himself risked the dangers which might result from the use of the engine in such defective condition.   But " there can be no doubt that, where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept."   Shearman & Redf. Negligence, sect. 96;  *Conroy* v. *Vulcan Iron Works,* 62 Mo. 35; *Patterson* v. *P. & C. R. W. Co.,* 76 Pa. St. 389; *Le Clair* v. *The First Division of the St. Paul & Pacific Railroad Co.,* 20 Minn. 9; *Brabbits* v. *R. W. Co.,* 38 Mo. 289.   " If the servant," says Mr. Cooley, in his work on Torts, 559, " having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good.   Moreover, the assurances remove all ground for the argument that the servant by continuing the employment engages to assume the risks."

And such seems to be the rule recognized in the English courts.   *Holmes* v. *Worthington,* 2 Fos. & Fin. 533; *Holmes* v. *Clarke,* 6 H. & N. 937; *Clarke* v. *Holmes,* 7 id. 937.   We may add, that it was for the jury to say whether the defect in the cow-catcher or pilot was such that none but a reckless engineer, utterly careless of his safety, would have used the engine without it being removed.   If, under all the circumstances, and in view of the promises to remedy the defect, the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery, upon the ground of contributory negligence.   That the engineer knew of the alleged defect was not, under the circumstances, and as matter of law, absolutely conclusive of want of due care on his part.   *Ford* v. *Fitchburg Railroad Co.,* 110 Mass. 261; *Laning* v. *N. Y. C. Railroad Co.,* 49 N. Y. 521.   In such a case as that here presented, the burden of proof to show contributory negligence was

upon the defendant. *Railroad Company* v. *Gladmon*, 15 Wall. 401; Wharton, Negligence, sect. 423, and authorities there cited in note 1; *Indianapolis & St. Louis Railroad Co.* v. *Horst*, 93 U. S. 291.

Our attention has been called to two cases determined in the Supreme Court of Texas, and which, it is urged, sustain the principles announced in the court below. After a careful consideration of those cases, we are of opinion that they do not necessarily conflict with the conclusions we have reached. Be this as it may, the questions before us, in the absence of statutory regulations by the State in which the cause of action arose, depend upon principles of general law, and in their determination we are not required to follow the decisions of the State courts.

> *Judgment reversed, and cause remanded, with directions to set aside the verdict and award a new trial, and for such other proceedings as may be consistent with this opinion.*

NOTE. — 73 N. Y. 40; 49 id. 530; 53 id. 551; 59 id. 517; 13 Allen, 440; 48 Me. 116; 66 id. 425; 3 Dillon, 321; 55 Ill. 492; 45 id. 197; 60 id. 175; 8 Allen, 441; 1 Coldw. 613; 38 Wis. 293; 78 Pa. St. 32; 46 Mo. 169; 20 Minn. 9; 3 Sawyer, 444; Wharton, Negligence (2d ed.), sects. 199–242 and notes.