## WILLIAM C. REDDON, RESPONDENT, *v.* UNION PACIFIC RAILWAY CO., APPELLANT.

MASTER AND SERVANT—FELLOW SERVANT.—The superintendent of a mine who has general and entire charge of the work, who employs and discharges workmen, and directs their duties and employments, is not a fellow servant with a common laborer in a mine, whose duty it is to obey the orders of the superintendent.

ID.—CONTRIBUTORY NEGLIGENCE.—Where the plaintiff entered upon a dangerous occupation in the service of the defendant, and became aware of certain defects in the mine and made known the defects to the superintendent of the defendant, and the superintendent promised to remedy the defect, the presumption of contributory negligence on the part of the plaintiff is removed, and a case presented for the jury.

ID.—ID.—NON-SUIT.—Where the evidence for plaintiff, the servant, showed negligence on the part of the defendant, the master, and contributory negligence on the part of the servant, does not appear affirmatively from the testimony of plaintiff, contributory negligence is an affirmative defense, and the burden of showing it is upon the defendant.

TRIAL—INSTRUCTIONS.—It is not error for the court to refuse to give proper instructions requested, if in its own language it gives the substance of such instructions.

EXCESSIVE DAMAGES—PERSONAL INJURIES.—Where the evidence showed that plaintiff was thirty-six years of age, and had, before the injury, always been well and healthy, and that the injury was to the nerves of the back and to the spinal column, and was permanent, that it was and had continued to be very painful and necessitated constant care and attendance for plaintiff, and that

his lower limbs were so paralyzed that he had little use of them; *held*, that a verdict for $15,000 was not excessive.

ID.—REMITTER.—The overruling of a motion for new trial on the condition that a portion of the damages given by the verdict be remitted, is in the discretion of the trial court, and is not ground for reversal of the judgment, as showing that the whole verdict was tainted, and that none of it should stand.

APPEAL from a judgment of the district court of the third district, and from an order refusing a new trial.

The seventh instruction given was as follows:

7. You are further charged, gentlemen of the jury, that the defendant was not the insurer of the safety of the plaintiff in its employ. It simply engaged to exercise ordinary care, to keep the mine and the workings in a reasonably safe condition, and if it failed to do so it is liable to the plaintiff for any injury which may have befallen him by reason of such failure, while the plaintiff was engaged in the due course of his employment, provided that you believe from the evidence that the plaintiff at the time was free from fault or negligence on his own part.

If the jury find from the evidence that the entry in which the plaintiff was working at the time he was injured was unsafe and very dangerous, and that he, prior to and at that time, knew or had the means of knowing that fact equally with the defendant, he cannot recover for such injury, although received by reason of such unsafe condition, unless you further find from the evidence that the plaintiff called the attention of the defendant's foreman to such danger or notified the defendant thereof, and the defendant by its proper agent assured the plaintiff that the danger would be remedied within a reasonable time, and the plaintiff relying thereon continued to work. What will constitute such reasonable time is to be determined by you, from the circumstances and the character of the danger; and if a reasonable time had not expired before the accident causing the injury took place, the plaintiff had assumed the risk of the peril.

The remaining facts are sufficiently stated in the opinion.

*Mr. P. L. Williams,* for appellant.

The damages given by the verdict were excessive: *Kan. Pac. R'y Co.* v. *Peavy*, 11 Amer. and Eng. R. R. Cases, 260, and cases reviewed at pages 269-70; *Sioux City & Pac. R. R. Co.* v. *Finlayson*, 18 Amer. and Eng. R. R. Cases, 68; *Ill. Cent. R. R. Co.* v. *Ebert*, 74 Ill., 399; *Chi. West Div. R'y Co.* v. *Hughes*, 87 Ill., 94; *Chi. R. I. & Pac. R. R. Co.* v. *Payzant*, 87 Ill., 125; *Ill. Cent. R. R. Co.* v. *Parks*, 88 Ill., 373.

On the hearing of the appellant's motion for a new trial in the district court, that court declared that in its opinion the verdict was excessive, and that a new trial ought to be granted unless the plaintiff remitted $5,000, which being done the motion was denied.

Admitting for the moment that the court could properly correct this error of the jury in the manner pursued, it is still insisted that it did not do so, but that the sum of $15,000, which was substituted for the verdict of the jury, is excessive and the judgment for that sum should be reversed.

Although the practice pursued in this case by the district court is often adopted, it is not uniformly supported by the authorities, nor easily justified by reason. The finding by the court below that the verdict was excessive, necessarily implies also the finding, that it was the result of passion or prejudice.

Can the remission of a part of a verdict founded in prejudice or passion free it from that stain and blot? Surely not. The attempt by this means to do so is not consistent with the provision of the statute itself, with reason, or a proper regard for the pure and unbiased administration of the law: Suth. on Dam., vol. 1, 813, *et seq.*, and cases there cited: *Koeltz* v. *Blackman*, 46 Mo., 320; 17 Grant, 366.

The defendant's motion for non-suit should have been sustained.

The charge of the court numbered seven, is to the effect that the plaintiff might recover, notwithstanding he voluntarily and with full knowledge of the facts worked in a dangerous place, and that he would be barred of a recovery only in a case of voluntarily, and with knowledge, or the

means of knowing the facts, working in a *very* dangerous place. This is inconsistent with the current of authority and is erroneous: Beach on Contributory Negl., sec. 12, and cases cited; *City of Erie* v. *Magill,* 47 Amer. Rep., 739 and note; *Schaefler* v. *City of Sandusky,* 31 Amer. Rep., 533; *Mansfield Coal & Coke Co.* v. *McEnery,* 36 Amer. Rep., 662; Wharton on Negl., sec. 214, and cases cited; *Mehan* v. *Syracuse, etc., R. R. Corp.,* 73 N. Y., 585.

This error was not cured by the latter part of the instruction, which is to the effect that the plaintiff might recover if he was assured that the danger would be remedied in a reasonable time, and he, relying thereon, continued to work, because the jury may have found, and most likely did find, that such promise was never made, but gave the plaintiff the verdict on the theory that the entry, although dangerous, and well known to be so to the plaintiff, yet was not *very* dangerous.

This instruction was also erroneous in that it involved the hypothesis that evidence was given that a promise had been made to repair the defect in a reasonable time, or in some stated time, which the jury might find to be reasonable, when such was not the fact.

If the jury found that the promise was made, but that it was indefinite as to time, as it clearly was if made at all, then it furnished no ground of recovery: 38 Amer. Reports, 242, *supra.*

*Mr. Arthur Brown* and *Mr. E. B. Critchlow,* for respondent.

Cases cited by appellants as to excessive damages are merely individual cases. For elements of damage we refer to: *Berg* v. *C. M. & St. P. R. R.,* 50 Wis., 419; *Salen* v. *Virginia City R. R.,* 13 Nev., 107; 1 Sutherland Dam., 810; *Atchison R. R. Co.* v. *Moore,* 65 Am. & Eng. R. R. cases, 321; *Bower* v. *U. P. R. R. Co.,* 7 Pac. Rep., 251; *Knapp* v. *Sioux City R. R.,* 32 N. W. Rep., 18.

Court may remit part of damages: 1 Sutherland Dam., 812; Case of *Koeltz* v. *Blochman,* 46 Mo., 320, ignored

by *Johnston* v. *Morrow*, 60 Mo., 339 and *Sharp* v. *Johnston*, 76 Mo., 674.

The evidence as to the promise to remedy defects, was that the foreman assured plaintiff that the level would be fixed as soon as the rush was over, and at the same time plaintiff was urged to go on and work. See as to the effect of such promise the following cases: *Hough* v. *R. R. Co.*, 100 U. S., 225; *Patterson* v. *R. R. Co.*, 76 Penn. State, 289; *Conroy* v. *Iron Works*, 62 Mo., 35; Sherman & Redfield Neg., Sec. 96.

The seventh instruction given by the court (Record page 120), is based upon a request made by counsel for defendant. As given, the charge comprises all that was asked, and the modification of it by the use of the word *very* is a modification which operated solely in the interest of the defendant. But even as requested, the law is not correctly stated. See cases above cited: *Snow* v. *R. R. Co.*, 8 Allen, 441; *Huddleston* v. *R. R. Co.*, 49 N. Y., 536; *Patterson* v. *R. R. Co.*, 76 Penn. State, 289.

Even if plaintiff knew of the risk he was running, nevertheless if this risk was incurred on account of negligence on the part of the defendant in allowing the roof of the entry to become unsafe, the case must go to the jury. It is not for the court to say, as a matter of law, that working any entry with knowledge is of itself contributory negligence. See cases above cited, also: *Patterson* v. *Wallace*, 2 Thomson Neg., 1011, 1015; *R. R. Co.* v. *Stout*, 17 Wallace, 657; *Thurber* v. *Harlem R. R. Co.*, 60 N. Y., 327; 42 Wis., 583, 599.

If plaintiff was commanded by his superior, the representative of defendant, to do a certain piece of work, in particular way, immediately and under circumstances themselves dangerous, the plaintiff was not guilty of negligence in obeying orders: 36 Iowa, 278; 24 Fed. Rep., 906.

HENDERSON, J.:

The plaintiff seeks in this action to recover against the defendant damages on account or a personal injury which he received while in its employ as a laborer in its coal mine. The evidence on the part of the plaintiff tended to

show, that the defendant was the owner of and was operating a coal mine known as the "Grass Creek Mine;" that the mine consisted of extensive under-ground workings, requiring the services of a large number of miners and workmen; that during the time in controversy one Thomas Thomas was defendant's foreman, and as such had entire supervision of the mine and all the workings, employed and discharged laborers, and prescribed their duties; that the plaintiff was a practical coal miner, and had been for some years; that on the first day of December, 1884, the plaintiff applied to Thomas for employment, and was employed by him in defendant's mine; that the openings to and from the mine were through various entries, which were designated by numbers, and all entering on the vein of coal on an incline, and were separated from each other by columns or partitions left in the coal vein to support the roof, these partitions being know to the miners as "ribs;" that through all these entries tracks were laid and horse cars run for a great distance into the mine, for the purpose of bringing out the coal; that at the time the plaintiff was employed, for some time before, and from that time up to the time of the injury, there was going on in said mine what is known among miners as a "squeeze," which consists of the settling of the base of the columns or partitions left to support the roof into the softer material of the floor, thereby causing the floors in the spaces to heave, and masses of rock and coal to fall from the top and sides, rendering them more or less dangerous; that this process was more apparent in the fifth entry, making it more dangerous than the other portions of the mine; that when plaintiff commenced work he was, with other workmen, under the immediate supervision of the super-intendent, set at work clearing up the *debris* which had fallen in the fifth entry on account of the "squeeze," and leveling the floor, and relaying the car track, other workmen following and casing and timbering to protect from the falling material as fast as the entry was cleared, such work commencing at the mouth of the entry, and extending along it towards the interior of the mine; that after such clearing and timbering had proceeded for some days,

and had been extended back some distance from the mouth of the opening, the superintendent, Mr. Thomas, directed the timbering stopped, and the workmen engaged in it were directed by him to assist in the clearing, giving as a reason that he was in a hurry to get the cars running through the entry, and saying he would timber it after the clearing was done, but that no further timbering or casing was done; that the clearing of the fifth entry was finished about January 15th following plaintiff's employment, and from that time up to the time of the injury, which occurred May 15th thereafter, the plaintiff was engaged as track-layer and repairer, his duties as such calling him to the various entries and chambers of the mine connected therewith, laying track, removing *debris* therefrom, putting in switches and connections between the various tracks going from one portion of the mine to another, as directed by the superintendent; that during all this time coal and other material was occasionally falling from the sides and roof of the various entries, but that it was falling most in the fifth entry beyond the timbering, and that such entry was dangerous, and was so understood by the plaintiff and all the workmen; that the superintendent knew of the unsafe condition of the fifth entry, was constantly about the mine, and that his attention was particularly called to its unsafe condition; that one of the workmen called his attention to it at the time he ordered the timbering discontinued, and told him that unless it was timbered, some one would be hurt, and he replied that there was not time then, but that he would timber it after the entry was cleared; that three or four days before the injury, while the superintendent was passing along the fifth entry, the plaintiff called his attention to its unsafe condition, and walked with him along the entry back of the timbering, and back of the particular place where the injury occurred, and notified him of its condition, and the superintendent promised to fix it, the plaintiff himself stating the conversation as follows: "*Answer.* I took him and told him this coal was going to fall, if it wasn't taken down, I was afeard; and I took him in along the road all the way in, sounded the coal for him, until I got him to

the room where Mr. Locke worked—John Locke—and that was the dangerousest place there was, between his rib and the next one; and he says: 'Bill,' he says, 'that won't fall yet; you have no idea how this coal will hang;' and he says 'I can't stop the turn to take it down now, but'—says he— 'I will take it down some other time.' Them was just the words that was used, as near as I can get at it. *Question.* What more did he say, if anything, than that he wanted to keep the turn running? *A.* Why, he didn't say nothing, only as I told you; he said that he couldn't stop the turn then to take it down,—that he would take it down some other time—have it taken down; he didn't take it himself, of course. *Q.* He said he would take the coal down? *A.* Yes, sir; he would have it taken down; he didn't work his own self." That on the twenty-fifth day of May the plaintiff was called from another part of the mine by the superintendent, and was directed to go into the fifth entry at a place beyond the timbering, but not at the particular place where plaintiff had called the attention of the superintendent to the loose coal, and there load up some coal which cumbered the track. The plaintiff commenced the work, and within a few moments a large mass of coal fell from the sides upon the plaintiff, causing the injury complained of. The direction of the superintendent to do this particular work was testified to by the plaintiff as follows: "*Answer.* Mr. Thomas ordered me and Mr. Harry Thomas over there, to go in and clear up the coal and lower the track. *Question.* Well, what did you do after having received those orders? *A.* I went in the entry and stayed there until the turn—we was a little ahead of the trip; that is, the turn coming in. The man that drove the cars stayed there until they came in, and Mr. Thomas came in also, right behind the cars, and I asked him if I should start in here, and he says 'Yes, clear right up, boys'— *Q.* (*Interrupting.*) Which Thomas do you mean? *A.* Thomas Thomas. He says: 'Hurry and clear up, for I want to send coal out here this evening.' "

The plaintiff's testimony further tended to show that the plaintiff knew from reputation and hearsay what effect a "squeeze" had on a mine, but had never had experience

with one before; that Mr. Thomas, the foreman, had had experience in seven or eight "squeezed" mines before; that timbering or casing, and removing coal as fast as it was loose from the walls, would have lessened the danger, and been a protection, and that such is the usual precaution in mines undergoing a "squeeze," but that neither was done, except the timbering above mentioned. The plaintiff was 36 years of age, had always been well and healthy before the accident, and the testimony tended to show that the injury received by the plaintiff was to the nerves of the back, and to the spinal column, and was permanent; and that it was and is very painful, totally disabling him from any labor; and that he requires the constant care and attendance of nurses; that he cannot dress or undress without assistance, and that his lower limbs are so far paralyzed that he has but little use of them.

At the close of the testimony for the plaintiff the defendant moved the court for a nonsuit, on the ground that the plaintiff had not made a case entitling him to recover, and because the plaintiff's testimony showed that he was guilty of contributory negligence, which was overruled by the court. The defendant's testimony tended to show that the plaintiff, by the exercise of due diligence, could have avoided the accident by discovering that the coal which fell on him was loose; that he knew the dangerous condition of the mine, and of the fifth entry, where he was hurt, and tended to contradict the plaintiff's testimony. At the close of the testimony the defendant presented a number of requests to charge. The trial judge did not follow the requests to charge, but formulated his charge to the jury, varying and modifying some of the requests. The jury returned a verdict for the plaintiff for $20,000, and judgment was entered thereon. The defendant thereupon moved for a new trial on statement, on the ground, among other things, that the damages were excessive. The court overruled the motion for a new trial, upon condition that the plaintiff should remit $5,000 from the verdict and judgment, which the plaintiff did, and the motion for a new trial was denied; and the defendant appeals to this court from the judgment and order overruling motion for a new trial.

The first question arising upon this record is the ruling of the court in overruling the appellant's motion for nonsuit. The first ground stated for a nonsuit raises the question as to whether under this state of the case the defendant is liable to the plaintiff for the acts of Thomas, the superintendent; and, if so, whether negligence or neglect of duty was shown which was the proximate and efficient cause of the injury. In the reported cases of the various states there has been much discussion and diversity of opinion as to the responsibility of masters for the acts and omissions of co-employes, and as to how far and under what circumstances agents and employees engaged in various departments of duty and service are fellow-workmen or co-employees with other servants, so as to exempt the master from liability for their acts; but we think that the great weight of authority in the state courts establishes the proposition that the superintendant of a mine who has general and entire charge of the work, employs and discharges workmen, and directs their duties and employments, is not a co-employee with common laborers in the mine, whose duty it is to obey the order of such superintendent, within the rule exempting the master from responsibility for the acts and omissions of such superintendent, and that as to such common workmen the master is responsible for neglect of duty by such superintendent. *Ryan* v. *Bagaley*, 50 Mich., 179; *Birckner* v. *Railroad Co.*, 49 N. Y., 672; *Malone* v. *Hathaway*, 64 N. Y., 5; *Railroad Co.* v. *Stevens*, 20 Ohio, 415; *Railroad Co.* v. *Keary*, 3 Ohio St., 201; *Railroad Co.* v. *Collins*, 2 Duv., 114; *Ford* v. *Railroad Co.*, 110 Mass., 241; 1 Redf. R. R., 554; Whart. Neg., sec. 232; *Bowers* v. *Railroad Co.*, 4 Utah, 215. This rule is recognized and adopted by the federal courts; *Railway Co.* v. *Ross*, 112 U. S., 377; *Hough* v. *Railway Co.*, 100 U. S., 213; *Railroad Co.* v. *Herbert*, 116 U. S., 642; *Railroad Co.* v. *Fort*, 17 Wall., 553.

Did, then, the evidence tend to show negligence on the part of the superintendent, or was the accident the natural result of the dangerous and hazardous business in which the plaintiff had voluntarily engaged to serve the defendant? One who engages in the employment of an-

other for the performance of certain duties for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of the service, and the pay is presumed to be regulated to cover compensation for such risk. This is a part of the contract on the part of the employee, and this rule applies as well where the service in which he engages is naturally hazardous or extra-hazardous. This is so well established by adjudications that references are needless. On the other hand, it is the duty of the master not to expose the servant in performing his duties to hazards or perils which may be guarded against by proper diligence. It is his duty to observe all the care which prudence and the exigencies of the situation require, and to furnish reasonably safe and proper structures and instrumentalities to avoid danger. He is not required to furnish the safest known appliances and means of avoiding danger, but such as are usual and reasonable under the particular circumstances and exigencies, and this is a part of the contract of hire on the part of the master: *Hough* v. *Railway Co.*, 100 U. S., 213; *Railway Co.* v. *Fort*, 17 Wall., 553; *Railway Co.* v. *McDaniels*, 107 U. S., 454. The servant's exposure to hazards resulting from the violation of this duty on the part of the master is not within his contract of service, and the master is liable for injuries resulting therefrom: *Hough* v. *Railway Co.*, *supra*. We are of the opinion that the testimony clearly tended to show that the accident to plaintiff was the result of a violation of this duty on the part of the defendant, and should have been submitted to the jury. The superintendent knew of the dangerous character of the mine resulting from the process then going on in it. His attention had been expressly called to the danger in the fifth entry; he had recognized the danger and the necessity and propriety of timbering or casing, and of sounding along the walls, and removing the loose coal and *debris*, by promising that it should be done; and it is reasonable to suppose, from the testimony, that the accident would have been avoided if either had been done; but, representing the company, simply to facilitate its operations, and suit its convenience,

this precaution was neglected and the plaintiff subjected to the risk which resulted in his injury.

The ground most relied on by appellant for a non-suit is "that the plaintiff was guilty of contributory negligence." At the close of the plaintiff's testimony the court should not grant a non-suit, on the ground of contributory negligence, unless it affirmatively appears by his testimony. Contributory negligence is an affirmative defense, and the burden of showing it was upon the defendant: *Hough* v. *Railway Co., supra; Railroad Co.* v. *Gladmon,* 15 Wall., 401; Whart. Neg., sec. 423; *Bowers* v. *Railroad Co.,* 4 Utah 215; *Railroad Co.* v. *Horst,* 93 U. S., 291. A non-suit should not be granted, and the case taken from the jury, unless the court will feel constrained to grant a new trial upon the same evidence. *Bowers* v. *Railroad Co., supra; Railroad Co.* v. *Stout,* 17 Wall., 657; *Randall* v. *Railroad Co.,* 109 U. S., 478.

It is insisted by appellant that the plaintiff's testimony shows that he knew of the dangerous character of the mine, and of the precautions taken by defendant to avoid accident, and that by continuing in its employ after such knowledge he was guilty of contributory negligence. If a servant, before he enters service, or afterwards, discovers that the instrumentalities furnished for his protection are defective, and understands, or by the exercise of ordinary observation ought to understand, the risks to which he is thereby exposed, and if notwithstanding such knowledge, he, without objection, and without any promise on the part of the employer that such defects will be remedied, continues in such service, he cannot recover for injuries resulting therefrom, but will be deemed to have waived all negligence and neglect of duty on the part of the master, and would be guilty of contributing to such negligence: *Hough* v. *Railway Co., supra: Greene* v. *Railway Co.,* 17 N. W. Rep., 378. But where there is any evidence tending to rebut the presumption of waiver on the part of the servant, it presents a case for the jury: *Hough* v. *Railway Co., supra; Greene* v. *Railway Co., supra; Lansing* v. *Railroad Co.,* 49 N. Y., 521. We think that the promise of the superintendent in this case,

to remedy the defect, was very clearly evidence tending
to rebut the presumption that the plaintiff, by continu-
ing in the employment, assumed the increased risk by
the defendant's neglect.   In *Hough* v. *Railway Co.*, before
referred to, Mr. Justice Harlan, speaking for the court,
quotes with approval from Shear. & R. Neg., sec. 96, as
follows: "There can be no doubt that where a master
has expressly promised to repair a defect, the servant
can recover for an injury caused thereby, within such a
period of time after the promise, as it would be reason-
able to allow for its performance, and, as we think, for an
injury suffered within any period which would not pre-
clude all reasonable expectation that the promise might
be kept."   And he cites in support of the doctrine thus
stated: *Conroy* v. *Ironworks*, 62 Mo., 35;  *Patterson* v.
*Railroad Co.*, 76 Pa. St., 389; *Le Clair* v. *Railroad Co,.*
20 Minn. 9 (Gil. 1.)   And, again, quoting from Cooley
on Torts, he says: "If the servant, having a right to
abandon the service because it is dangerous, refrains
from doing so in consequence of assurances that the
danger shall be removed, the duty to remove the dan-
ger is manifest and imperative, and the master is not
in the exercise of ordinary care unless or until he makes
his assurances good.   Moreover, the assurance removes all
ground for the argument that the servant by continuing
the employment engages to assume the risks."   See, also,
*Greene* v. *Railway Co.*, *supra*.   In this case the plaintiff
called the attention of the superintendent to the defect,
and made known his fears, and the superintendent in re-
ply asserted his superior knowledge to that of the plaintiff,
and assured him there was no danger, but promised to
remedy the defect.   In prosecuting such a work as the de-
fendant was here conducting, persons are selected and em-
ployed with reference to the duties they are intrusted
with.   A superintendent is employed for his supposed
superiority in ability, capacity and experience to the com-
mon laborers who are under his supervision; he is sup-
posed to inspire their trust and confidence; they are ac-
customed to obey his orders, and to trust to his superior
judgment.   The representations and promises of this

superintendent were undoubtedly made to the plaintiff to induce him to continue his service, and dispel his fears. Is it unreasonable to suppose that it did so? We think not. We are of the opinion that it was for the jury to say whether the defective appliances and precautions were such that it was negligent for the plaintiff to continue the service; and if, under all the circumstances, considering the promise and conduct of the superintendent, the plaintiff was not wanting in due care and caution in continuing, then the defendant was not excused for the ommission to perform its duty.

The appellant also complains of the refusal to give various of its requests to charge, and to the modifications of some. The charge given by the court was in accordance with the principles before stated. This court has held that it is not error to refuse to give instructions in themselves proper, in the language they are requested, if the court in its own language gives their substance. The requests, so far as they were proper, were substantially given; indeed, the substance of most of the defendant's requests was given. The change made by the court in the giving of defendant's third request, in view of other portions of the charge given, was immaterial. The defendant requested the court to charge as follows: "If you find that it was the the course pursued in this instance by the defendant to carry on the business of mining, while the walls and surroundings in the mine were unsafe and dangerous, and this fact was known to the plaintiff, and that he also knew the character of the dangers there existing, and yet entered upon and continued in said service, he assumed the risk of such dangers, and is not entitled to recover in this action." This the court did not give, but did instruct the jury that under substantially such circumstances the defendant would not be liable, unless there was an agreement to remedy the defect, and provide necessary and proper protection, and that the plaintiff, relying upon such promises, continued his work; and this was all the defendant could properly ask.

The appellant asks that the judgment be reversed because the damages were excessive, appearing to have been

given under the influence of passion or prejudice. The argument is that the trial court, having determined that the damages are excessive, it taints the whole verdict, and that none of it should stand. The practice which was pursued in this case is thoroughly established by precedent. 1 Suth. Dam. 813-815, and cases there cited. It is a supervision which courts exercise over verdicts for the protection of defendants in what are deemed to be proper cases, and if the rule is ever to be disturbed, it should be on the application of parties injured, and not those who are benefited by it. We are not prepared to say that the damages, after the reduction, are excessive, in view of the severe character of the injuries. The discretion of the trial judge in this respect, who saw the plaintiff personally and heard the testimony of all the witnesses, ought not to be disturbed, unless it presents a plain case of the abuse of its exercise.

The judgment and order appealed from should be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.