GUNTER v. GRANITEVILLE MANUFACTURING COMPANY.

1. Where the presiding judge said to the jury concerning requests to charge "that most, if not all, of them were in accordance with the law as understood by me, and already laid down in my charge," but "were declined so far as they contained matter inconsistent with the instructions already given," a request to charge cannot be said to have been refused unless shown to be inconsistent with the general charge.
2. A workman, employed by a cotton manufacturing company to keep the machinery of the mill in repair and good working order, is not a fellow-servant with a weaver in the factory in such a sense as to exempt the employer from liability for an injury to the weaver caused by the negligence of such workman.
3. A master is liable for any injury to his servant caused by his own negligence, or by the negligence of any person representing him; and a person employed to do anything which it is the master's duty to do—as e. g., in a cotton factory, to employ the operatives and discharge them when incom-

petent or careless, to provide suitable machinery, and to keep it in proper repair and safe working order—is the master's representative.

4. In action against a corporation for damages, an employe of the company was called as a juror and examined on his *voir dire;* after answering in the negative the statutory questions, he was asked by the court if he was an employe of the defendant, and the juror said he was, whereupon he was excluded. *Held,* that the question was proper, and that the propriety of this juror's exclusion was a matter wholly within the discretion of the presiding judge.

Before KERSHAW, J., Aiken, September, 1881.

This was an action by Marina S. Gunter against the Graniteville Manufacturing Company, commenced October 4th, 1879, for $10,000 damages for the loss of an eye, caused by a shuttle flying from its place while a loom was being repaired, in work hours, by one Harling, the loom repairer. The case was tried in September, 1880, and a verdict was rendered for plaintiff for $2,000. On defendant's appeal, a new trial was granted; and at this second trial the verdict was for plaintiff, $5,400.

The judge's charge was as follows:

In order that the plaintiff may recover, it must appear to you that the facts alleged in the complaint are true as alleged therein. That the plaintiff was employed by the defendant company at the time of the alleged injury. That the defendant was negligent in providing and using unsafe, defective and insecure machinery, or in causing the machinery to be repaired during working hours, and when the plaintiff was compelled, in the performance of her duty, to be so near the same as greatly to endanger her person. That the plaintiff suffered the injury complained of. That the injury was caused by the alleged negligence of the defendant.

The whole law of this case is laid down in the opinion of the Supreme Court read in your hearing, and you will take that as a part of this charge. Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done, the

essence of the fault being either in the omission or commission of the duty.

To apply this definition to the conduct of the defendant, it was their duty to provide and use such machinery only as a reasonable and prudent person would ordinarily have done, under the circumstances of the situation in which they were. It was their duty to keep the same in repair as a reasonable and prudent person would ordinarily have done under the same circumstances. It was their duty to repair, or cause to be repaired, the machinery at such hours and in such manner as a reasonable and prudent person would have done under the same circumstances.

If the defendant company has failed in these duties, or any of them, they have been negligent in a legal sense, and if the plaintiff has been injured as the direct result of such negligence, the defendant is liable, unless it appeared that there are other circumstances in the case which will excuse the company from liability. For if the injury complained of was not entirely occasioned by the negligence or improper conduct of the defendant, but would, notwithstanding such faults of the defendant, have been avoided, but for the negligence or want of ordinary care on the part of the plaintiff, the defendant is entitled to the verdict. So, also, if the injury was not entirely occasioned by the negligence or improper conduct of the defendant, but would have been avoided but for the negligence or want of ordinary care on the part of a co-laborer of the plaintiff, the defendant is entitled to a verdict, unless it appear that the defendant had not used ordinary care and reasonable prudence in the selection of such a co-laborer, it being a principle of law, that the employe assumes the risks incident to his employment, one of which is the negligence of a co-laborer. The company is liable for the negligence of its officers and agents to whom it delegates the control of its business and operatives, and the performance of their duties, but not for that of a co-laborer of the plaintiff.

The term co-laborer embraces all those employed in performing any portion of the work of the cotton mill, in which the plaintiff was employed, in any of its departments, but not a workman employed to keep the machinery in repair, though in some respects a fellow-servant or co-laborer. As to what con-

stitutes a middle man, or such an officer or agent as to represent the company as to make it liable for his negligent acts or omissions, I will read a passage from the case of *Buckner* v. *The New York Central Railroad Company*, cited in 31 *Am. Rep.* 515, 516. * * *

If then you find that the plaintiff has suffered the injury complained of as a direct result of the negligence of the defendant or its representatives, you will proceed to enquire whether it could have been avoided by the exercise of ordinary care or prudence of the plaintiff, or of any co-laborer whose want of care contributed directly to the injury, for if such want of care on the part of the plaintiff or her co-laborers in any way contributed to the cause of the injury, the defendant would not be liable, for when the injury in part was caused by the negligence of the plaintiff, and in part by negligence of the defendant, or of a co-laborer, the court will not distinguish between these contributing causes, but will refuse to interfere.

The questions are, was the injury complained of caused by the use of defective machinery as alleged? Were such defects known to the defendants, or might they have known of such defects by the use of ordinary care and prudence? Or was it caused in any part by the repairing of the machinery during the work hours? If so, was that a want of reasonable care and prudence on the part of the defendants, or was it caused by a want of reasonable care and prudence on the part of the workmen appointed to repair the machinery? If so, then the defendants would be liable, unless you find that the negligence or want of reasonable care and prudence on the part of the plaintiff, or on the part of a co-laborer, contributed to the cause of the injury, as I have before stated.

What act is there on the part of the plaintiff which she ought not to have done, as a reasonable and prudent person, which contributed as a cause to her injury? If you find any such, she cannot recover. What ought she to have done, as a reasonable and prudent person, to avoid such injury which she did not do? If you find any such neglect on her part that contributed as a cause of the injury, she cannot recover. If you find no such negligence on the part of the plaintiff, then apply the same test

to the conduct of any co-laborer of the plaintiff having any connection with the accident. If you find any such contributory negligence on the part of any co-laborer of the plaintiff, she cannot recover.

But if you find that the injury was caused entirely by the negligence of the defendant company or their agents, middlemen or representatives, your verdict should be for the plaintiff. If you find for the plaintiff, you must find such a sum of money as you may think should reasonably compensate her for the injury she has sustained, the loss of time, mental and bodily suffering, loss of eyesight, and other permanent injuries and disabilities. [Here the learned judge read the fifth syllabus in *Hough* v. *Railway Company,* 10 *Otto* 214, as a part of his charge.]

The defendants moved for a new trial, which being refused, they appealed to this court on the exceptions stated in the opinion.

*Messrs. D. S. Henderson* and *Youmans*, Attorney-General, for appellants.

I. On the request to charge, first considered by this court, the following authorities were cited: 24 *N. Y.* 442; *Prof. Jury Tr.,* § 337; *Shearm. & R. Negl.,* §§ 87, 88, 92; *Wood M. & S.* §§ 331, 332, 333, 452; 32 *Md.* 411; *Cooley M. & S.* 7–13; 2 *Thomp. Negl.* 971; 1 *Add. Torts* 904. II. Counsel cited *Wood M. & S.,* § 326; *Cooley M. & S.* 6–11; 50 *Geo.* 465; 55 *Id.* 133; 58 *Id.* 490; 25 *N. Y.* 565. III. Counsel cited *Wood M. & S.,* § 327; *Shearm. & R. Negl.* 94. IV. Upon the next request to charge, and the alleged error in the charge, considered together by the court, counsel cited *Cooley M. & S.* 3–18; *Wood M. & S.,* §§ 393–396; 39 *N. Y.* 468; 53 *Id.* 549; 12 *Otto* 213; 9 *Cush.* 113; *Shearm. & R. Negl.,* §§ 100–110; *Prof. Jury Tr.,* § 344. V. On last request to charge, *Wood M. & S.,* § 419; *Cooley M. & S.* 18; *Shearm. & R. Negl.,* § 99.

*Messrs. W. W. Williams, O. C. Jordan, G. W. Croft,* contra.

November 27th, 1882. The opinion of the court was delivered by

MR. JUSTICE McIVER. This being the second appeal in this case, it will not be necessary to make any further statement of the case than such as may be sufficient for a proper understanding of the points raised by this appeal, inasmuch as a full statement may be found by reference to the case as reported in 15 *S. C.* 443. The points now raised arise upon the alleged refusal of the Circuit judge to charge certain propositions of law as requested by the defendant, and upon exceptions to the charge, and to the organization of the jury.

The first request, which appellant insists was erroneously refused, is as follows: "That manufacturing companies, as between them and their employes, are not bound to use such appliances as are of the best or most approved description. If they supply such as are reasonably safe, and have been sanctioned by use, they do all that the law requires. There is, in short, no implied warranty that the materials furnished by the master shall be sound and fit for the purpose, nor' that the servant shall not be exposed to extraordinary risks." It will be observed that the Circuit judge did not refuse to charge all of the propositions requested, but, on the contrary, in his settlement of the case, he says:

"At the conclusion of the charge, the jury were told that various requests to charge had been preferred by the counsel on either side, which they had heard read; 'that most, if not all, of them were in accordance with the law as understood by me, and already laid down in my charge; that I declined the requests to charge, on both sides, so far as they contained matter inconsistent with the instructions already given them,'" so that unless it appears that there was something in this request inconsistent with the instructions already given to the jury, it cannot be properly said that this request was refused.

The judge's charge was reduced to writing and is set out in the "Case," and need not be repeated here. Upon a careful examination of the charge, we are unable to discover anything in it which is inconsistent with the proposition contained in the first request. On the contrary, the jury were instructed that it was the duty of the defendant "to provide and use such machinery only as a reasonable and prudent person would ordinarily

have done under the circumstances of the situation in which they were." This necessarily implied that the defendant was "not bound to use such appliances as are of the best or most approved description," but only such as a reasonable and prudent person would ordinarily have used under similar circumstances. There was, therefore, not only no· inconsistency, but the proposition asked for was, in effect, charged.

The next request, which it is alleged was erroneously refused, was in the following language : " That the plaintiff having been injured by the flying out of a shuttle from a loom, upon which she was a weaver, if the jury find that she knew, when she undertook her employment, and during her continuance thereon, that the flying out of shuttles were matters of ordinary occurrence in the factory, and incident to the employment which she undertook, then she cannot recover, and the verdict must be for the defendants." This request also contained nothing inconsistent with the charge, but on the other hand was embraced in it. It involved the proposition that when one voluntarily engages in a service to which it is known that certain risks are incident, he assumes such risks, except where they result from the negligence of the employer or of any person who represents him. This proposition is distinctly announced in the opinion of this court at the hearing of the former appeal, which the Circuit judge had read to the jury as part of his charge, and in addition to this said, in so many words, to the jury, " that the employe assumes the risks incident to his employment." There is, therefore, no foundation for the charge of error in this respect.

The next request, which appellant claims was improperly refused, was as follows : " That if the jury find that there was once a shuttle-guard upon the loom in question, their next inquiry should be, how long that shuttle-guard had been removed before the accident, and if they find that the shuttle-guard had been absent any reasonable length of time before the accident, and without any complaints of its absence by the plaintiff, but that she worked upon the loom with it off, then the defendants are not to blame for its absence, and the verdict must be for the defendants." This request is based upon the doctrine of contributory negligence, and we think the law upon that subject

was fully and correctly expounded to the jury. There was nothing in this request inconsistent with the charge, and it was, in effect, adopted by the Circuit judge and laid before the jury.

The next request was in these words : " That if the jury find that the company exercised ordinary skill and caution in the purchasing of machinery, and the employment of competent and reliable persons to keep the same in order and superintend its working, then they have performed all their duty as employ- ers to their employe, the plaintiff, and she cannot recover." This involves the proposition that the employer's duty is fully complied with when he has exercised ordinary care in furnishing suitable machinery, and in the employment of competent and careful persons to keep the same in repair, and that his duty does not require him to go further and see that all needful repairs are made. A similar proposition is involved in the exception to the charge, which was " that his Honor erred in instructing the jury that ' the term co-laborer embraces all those employed in performing any portion of the work of the cotton mill, in which the plaintiff was employed, in any of its depart- ments, but not a workman employed to keep the machinery in repair, though, in some respects, a fellow-servant or co-laborer,' because it is submitted that in order to constitute a ' workman employed to keep the machinery in repair,' a middleman or representative of the company, said workman must have the power to employ and discharge hands, and purchase and change machinery, and said charge being intended to apply to the posi- tion of the witness, Harling, without such qualification, was calculated to mislead the jury, and was erroneous." This request, and the exception to the charge will, therefore, be con- sidered together.

Who is embraced within the terms co-laborer or fellow-servant is a question which has been the subject of no little discussion, and the authorities are somewhat conflicting. The question has been presented to different courts in various aspects, but we pro- pose to confine our attention to the form in which it is here presented. Is a workman, employed to keep the machinery of a cotton mill in repair and in good working order, a co-laborer or fellow-servant with an operative employed to attend one or more

looms as a weaver, in such a sense as to exempt the employer from liability for an injury caused by the negligence of the person employed to keep the looms in repair and proper working order? The rule seems to be well settled that the master is liable to his servant for any injury caused by his own negligence, or by the negligence of any person representing him. It would seem to be clear that any person employed by the master to do anything which it is the duty of the master to do, is his representative. It undoubtedly is the duty of the master to employ the laborers who are to operate the machinery, and discharge them if incompetent or careless; and, therefore, any person to whom this duty is delegated by the master is undoubtedly his representative, and the master would be responsible to his servant for any injury caused by the negligence of the person to whom this duty has been delegated.

So, too, it is conceded to be the duty of the master to provide suitable machinery for the use of his operatives; and if he delegates this duty to another, he is responsible to his servant for any injury caused by the negligence of any person to whom the performance of this duty has been entrusted. It is, likewise, the duty of the master to keep the machinery in proper repair and safe working order; and if he entrust the performance of this duty to another, we see no reason why he should not be held liable for injury to one of his servants, caused by the negligence of the person employed to perform this duty which it is incumbent upon the master to perform.

The test as to whether an employe is the representative of the master is, not whether such employe has the power to employ or discharge hands, or to purchase or change machinery, for, while these are some of the duties of the master, they are not all of his duties, and hence, an employe who is not entrusted with either of these powers may still be the representative of the master. The true test is whether the person in question is employed to do any of the duties of the master; if so, then he cannot be regarded as a fellow-servant or co-laborer with the operatives, but is the representative of the master, and any negligence on his part in the performance of the duty of the master

thus delegated to him must be regarded as the negligence of the master.

These views are fully supported by authority from other States, though, so far as we are informed, there is no case in this State directly upon the point now under consideration. *Murray* v. *The South Carolina Railroad Company,* 1 *McM.* 385, was a case in which a fireman on a locomotive was injured by the negligence of the engineer, and simply decided the general proposition that a master is not liable to one of his servants for an injury caused by the negligence of a fellow-servant, and does not purport to decide who is embraced within the term, fellow-servant. The case of *Conlin* v. *The City Council of Charleston,* 15 *Rich.* 201, turned upon the question whether the person whose negligence caused the injury was a servant of the city council or of an independent contractor.

There are decisions, however, in our sister States, in which the question has been distinctly raised and decided in conformity with the views hereinbefore advanced, and these cases appear to be fully sustained, both by reason and authority. In *Ford* v. *Fitchburg Railroad Company,* 110 *Mass.* 240 (14 *Am. Rep.* 598), a fireman was injured by reason of a defect in the engine, which was due to the neglect of the employes of the company charged with the duty of keeping the engine in repair, although the company had no reason to suspect negligence or incompetency on the part of such employes, and it was held that the company was liable. In that case the court used the following language: "The rule of law which exempts the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow-servants, does not excuse the employer from the exercise of ordinary care in supplying and maintaining suitable instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risk of the master's negligence in this respect. The fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from the obligation. The agents who are charged with the duty of sup--

plying safe machinery, are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with the master's duty to his servant."

*Corcoran* v. *Holbrook*, 59 *N. Y.* 517 (17 *Am. Rep.* 369), was a case in which an operative in a cotton mill was injured by the fall of an elevator, which was not kept in proper repair, and it was held that the master was liable. It is true that, in that case, the injury was attributable to the negligence of the general agent, to whom the defendant had entrusted the management of the mill, but the principle upon which the decision rests, shows that the liability of the master was fixed, not because the injury resulted from the negligence of a general agent, but because it was the duty of the master to supply and maintain suitable machinery, and if this duty was neglected, it did not matter to whom such duty was entrusted, the master would be liable. The court used this language: "It was the duty of the defendants towards their employes to keep the elevator in a safe condition, and to repair any injury to it which would endanger the lives or limbs of their employes, who were lawfully and properly, in the performance of their functions, in the habit of using it. That duty they delegated to their general agent. As to the acts which a master or principal is bound as such to perform towards his employes, if he delegates the performance of them to an agent, the agent occupies the place of the master, and the latter is deemed present, and held liable for the manner in which they are performed."

In *Brann* v. *Chicago, R. I. and P. R. R. Co.*, 53 *Iowa* 595 (36 *Am. Rep.* 243), a brakeman on a railway train was injured by reason of the failure of an inspector to perform his duty, and the company was held liable. After laying down the proposition, that it was the duty of the corporation, not only to provide, in the first place, suitable and safe machinery and appliances, but also to see that that they are kept in repair, the court said: "As the corporation must act through agents and employes, the negligence of the employes, upon whom the duty of inspection is devolved, is the negligence of the corporation," and cite a number of authorities to sustain the proposition.

In *Fuller* v. *Jewett*, 80 *N. Y.* 46 (36 *Am. Rep.* 575), an engineer on a railway was killed by the explosion of the boiler, resulting from a failure to keep it in proper repair, and it was held that the defendant was liable, although he had employed a competent superintendent of repairs and master mechanic, and made proper regulations, and the negligence was that of the mechanics directed to make the repairs. The defense was, that the negligence of the mechanics employed to make the repairs was the negligence of a fellow-servant, and, therefore, under the admitted rule, the employe was not liable for the injury sustained by one of his other servants; but the court said, "that acts which the master, as such, is bound to perform for the safety and protection of his employes, cannot be delegated so as to exonerate the former from liability to a servant, who is injured by the omission to perform the act or duty, or by its negligent performance, whether the non-feasance or misfeasance is that of a superior officer, agent or servant [or] of a subordinate or inferior agent or servant to whom the doing of the act or the performance of the duty has been committed. In either case, in respect to such act or duty, the servant who undertakes or omits to perform it is the representative of the master, and not a mere co-servant with the one who sustains the injury. The act or omission is the act or omission of the master, irrespective of the grade of the servant, whose negligence caused the injury, or of the fact whether it was, or was not, practicable for the master to act personally, or whether he did, or did not, do all that he personally could do, by selecting competent servants, or otherwise to secure the safety of his employes." And again, the court said, "the duty of maintaining machinery in repair for the protection and safety of employes is the same in kind as that of furnishing a safe and proper machine in the first instance." See, also, *Hough* v. *Railway Company*, 100 *U. S.* 213.

We are aware that there are cases, some of which have been cited by appellant, that seem to be in conflict with those above cited; but an attentive examination of those cases will show that they either ignore, or do not give full weight to what we

regard as the only true test as to whether the person in question occupies the position of a fellow-servant to the servant who is injured or is a representative of the master, and that is, whether the person whose status is in question is charged with the performance of a duty which properly belongs to the master. It is well settled that it is the duty of the master to provide suitable and safe machinery and appliances for the use of his operatives ; and, we think, it is also settled that his duty does not stop there, but that it is likewise his duty to keep such machinery in proper repair and safe working order, and if these duties, or either of them, are negligently performed, and one of the servants thereby sustains an injury, the master is liable, even though he may have entrusted the performance of such duties to subordinates, by whatever name they may be called, and even though the master may have exercised due care in the selection of such subordinates. We think, therefore, that the request to charge, which we have been considering, was properly refused, and that the exception to the charge cannot be sustained.

Finally, the defendant requested the Circuit judge to charge, " that the burden of proof is upon the plaintiff, to show that those who are employed by the defendants to superintend their work are incompetent, and they are presumed to be competent until shown to be otherwise by competent testimony." We see nothing in this request inconsistent with the charge of the Circuit judge, and, therefore, it cannot be said that it was refused. Indeed, we do not perceive its applicability to the case as made, inasmuch as there does not seem to be any pretense that the injury complained of resulted from any negligence on the part of " those who were employed by the defendants to superintend their work." But even conceding its applicability, its correctness was recognized by the former decision in this case, which was read to the jury as part of the judge's charge.

The only remaining question is as to the organization of the jury. It seems that one of the jurors presented was, on the motion of the plaintiff, examined on his *voir dire,* and to the question indicated by the statute ( *Gen. Stat. of* 1872, 523, § 25), he answered in the negative. He was then asked by the court whether he was in the employment of the defendant, to which

he replied that he was. In his settlement of the "Case," the Circuit judge says: "It appeared to me his relation to the defendant might (unconsciously to himself, perhaps,) prevent him from being wholly indifferent between the parties, and for that reason he was excluded." To this exception was duly taken. The statute above referred to reads as follows: "The court shall, on motion of either party in suit, examine on oath any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called."

The provision of the act, that "any other competent evidence in support of the objection" may be introduced, shows that negative answers to the questions indicated are not conclusive. This additional evidence may be obtained from answers of the juror to such additional questions as may be propounded to him by the court, as well as from any other competent source. The language of the act " if it appears to the court that the juror is not indifferent," shows that it is the mind of the judge before whom the case is tried, which is to be satisfied as to whether the person presented as a juror is a suitable person to serve as such, and, therefore, when, as in this case, the judge was not satisfied upon this point, we certainly cannot undertake to say that he should have been satisfied. This exception cannot be sustained.

The judgment of this court is that the judgment of the Circuit Court be affirmed.