Dickman, J.
There is no evidence that there was any carelessness on the part of Morrissey the defendant in error, in his mode of operating the machine through whose defects he was injured. On the morning of his injury — from the time of his commencing work, up to and at the time he was injured — he ran the machine much slower than usual, on *151 account of its bacl condition, and in order to avoid being hurt. The contributory negligence imputed to him, consisted in his knowing that the part called the “jointer” was out of repair, and could not be safely'used, and in thereafter remaining in the service of the company and continuing to operate that portion of the machine. For that reason, the court below took the ease from the jury, and directed a verdiet for the company. The question of contributory negligence on the part of the plaintiff is generally a mixed question of law and fact; but, it is only when the facts are beyond dispute and admit of no rational inference but that of negligence, that the court has the right to apply the law without the aid of a jury. The defendant in error, while in the employment of the company, was under the supervision and direction of a foreman, whose duty it was to manage and control the workmen, and see that the machinery was kept in good order and repair. As soon as Morrissey discovered, that the part of the machine upon which he was working, was in a condition unsuitable for use, he complained of the same to the foreman, who promised him that the defects in the machine should be remedied, and ordered him to continue at his work. He thereupon began work at once at the jointer, and in a short time thereafter, was injured through its defects, before any steps were taken to remedy them. As a fact which was taken to be beyond dispute, the court charged the jury, that the company was guilty of gross negligence. But, the court, in view of another fact beyond dispute, viz.: that Morrissey worked at the.machine with knowledge of its defective condition, evidently considered it a settled principle, that such knowledge was, as matter of law, conclusive of contributory negligence on his part; and ignored the importance of other material questions of fact not beyond dispute, which might tend to qualify or limit the legal effect of such knowledge, and which should have been submitted by the court to the consideration of the jury. After the promise made to Mor rissey himself by the foreman that the jointer should be “fixed,” and after hearing the foreman promise the same *152 thing two weeks before to another workman, it became a material question of fact for the jury to determine, under' proper instructions from the court, whether Morrissey after acquiring such knowledge, continued such a length of time in the service of the company, as to constitute a waiver on his part of the defects in the machine. Whether he after-wards remained in the employment of.the company, because of iiis reliance on the promise of the foreman to put the jointer in repair ; and whether the jointer was out of repair to such an extent, that a man of .ordinary care ■would not continue to use it, even after a promise to put it in good repair* — were also questions of fact, which should have been left to the determination of the jury, under proper instructions from the court. But it could not, in order to take the case from the jury, be said with reason, that knowledge alone of defects in the machinery and continuing to use the same, as matter of law,'admitted of no rational inference but that of negligence, when such knowledge is taken in .connection with the fact, that Morrissey complained to the .foreman of the defects, and received from him a promise that they should be remedied.
; The court below applied the doctrine in all its latitude, .•without any qualification in the light of other facts and cir.cumstances of the case, that if one knowingly and voluntarily exposes himself to danger by using dangerous ,■ machinery, he cannot be said to be without any fault or negligence on his part, and therefore cannot recover for ¡injuries suffered by him inconsequence. That a knowledge of the unsafe condition of the machinery used, is a .most important-element in determining the question of contributory negligence, there can be no doubt. Alone and unexplained, it may, under some circumstances, be conclusive thatthe injured party was willing to assume the attendant risks, and waive all. objections to the defects that rendered the machinery hazardous. But, such knowledge, on the part of one induced to remain in the service of an employer by a promise to remove the cause of danger, is not of itself,-in point of law, an answer sufficient to exoner *153 ate a defendant, who has omitted to supply machinery that is safe and proper. Relying upon such inducement held out by their employers, the most prudent workmen will often take risks, not merely on account of their own necessities, but in consideration of their employers whose interests require their continued service. Under such circumstances, the weight of authority is in accord with the language of Willes, J., in Holmes v. Worthington, 2 Foster and Finlason, 533.
“ If the defendants knew of the defect and undertook to repair it, and the plaintiff went on working, relying on their repairing it, then they may be liable. If the plaintiff complained of the defect, and the defendants promised that it should be remedied, he is not to be deprived of his remedy, merely because, relying on their promise, he remained in their employment.”
To the same effect was the judgment in Clarke v. Holmes, 7 Hurlstone & Norman, 937, in the exchequer chamber on appeal from the decision of the court of exchequer. In that case, the plaintiff was employed by the defendant to oil dangerous machinerjn At the time the plaintiff entered upon the service, the machinery was fenced, but the fencing became broken by accident. The plaintiff complained of the dangerous state of the machinery, and the defendant promised him that the fencing should be restored. The plaintiff, without any negligence on his part, was severely injured in consequence of the machinery remaining unfenced. It was held, in the exchequer chamber — affirming the judgment of the court of exchequer— that the defendant was liable for the injury. Chief Justice Cockburn, in delivering his opinion, very forcibly draws a distinction between the case of an employé who knowingly enters into an engagement to work on defective machinery, and that of him, who in the course of his employment discovers its defective condition, but is induced-to remain in the same service by the master promising him to remedy the defect. If the master in such a case fails to fulfil his obligation, the employé cannot be held to have waived his right to hold the'master responsible.
*154 The rule recognized in the English courts, has been followed by the supreme court of the United States in the instructive case, Hough v. Railroad Co., 100 U. S., 213. In that case, the engineer had a knowledge of the defect in the engine, and complained thereof to both the master-mechanic and the foreman of the round-house. They promised that it should be promptly remedied. But, the court below seemed to attach no consequence to the engineer’s complaint, or the promise made to him. Under the instructions given, if the engineer worked the engine with knowledge of its defect, the jury were to find for the company, although, ho may have been justified in relying upon the promise made to him that the defect should be remedied. The instruction in that branch of the case, involving the question of contributory negligence on the part of the engineer, was considered by the supreme court misleading and erroneous. Justice Harlan cites approvingly the language of Mr. Cooley, in his work on Torts. “If the servant having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant by continuing the employment engages to assume all risks.”
In view of the whole current of authority, and in the light of reason, we are led to the conclusion, that under the circumstances of the case at bar, Morrissey’s knowledge of the defective state of the machine which he was using and continued to use, was not, as matter of law, conclusive of contributory negligence On his part. Such knowledge however was a prominent fact in the case, to be taken into consideration by the jury in connection with all the other facts and circumstances, in determining the question, whether his own negligence contributed to the accident by which he was injured.
The judgment of the district court must be affirmed.

Judgment accordingly.