### ELLIS v. NORTHERN PAC. RY. CO.

(Circuit Court, D. Montana. July 2, 1900.)

#### No. 593.

**1. MASTER AND SERVANT—INJURY TO EMPLOYE—NEGLIGENCE—PLEADING.**

A railroad company is liable for injuries sustained by one of its servants employed as a boiler maker and repairer of ironwork on locomotives, through the breaking of a running board which the employe was directed by the company's foreman to stand upon for the purpose of making repairs to a locomotive, where the company knew it was in an unsafe condition, and failed to inform the servant thereof.

**2. SAME—LIABILITY FOR ACTS OF FOREMAN.**

The duty of exercising reasonable care in furnishing a servant a reasonably safe place to work being that of the master, a railroad company cannot delegate this duty to a foreman without placing such subordinate in its own position, and binding him to perform the same duties devolving upon the company.

Geo. M. Sinclair and Geo. B. Dygert, for plaintiff.
W. Wallace, Jr., for defendant.

KNOWLES, District Judge. The plaintiff alleges that he was working for the defendant in the capacity of a boiler maker and a repairer of ironwork on locomotives, and that as such it became his duty to assist in the mending and repairing of ironwork in connection with the locomotives of the defendant; that on the 3d day of November, 1894, the plaintiff, in the discharge and performance of his said duties, was directed and ordered by defendant to proceed with the repairs of a certain locomotive of the defendant; that said repairs consisted of repairing and fixing certain stay bolts on the locomotive of the defendant; that, for the purpose of making said repairs, plaintiff was directed by defendant, through its foreman, then and there the superior of plaintiff, and then and there in charge of said work and repairs, to go upon and stand upon that certain wooden structure upon said locomotive known as the "running board"; that the same was at said time, and for a long time prior thereto had been, rotten and decayed, and by reason of said condition was dangerous and unsafe for the purpose of standing or being thereon, and was incapable of sustaining the weight of plaintiff or of any man; that said condition was unknown to plaintiff; that said dangerous condition of said running board was at said time well known to the defendant; that had defendant exercised due or any care or prudence in the inspection and examination of said locomotive or its running board at said time, or

at any time prior thereto, it could have ascertained the dangerous and unsafe condition of said running board, but said defendant wholly neglected its duty in that behalf, willfully, carelessly, and negligently failed and refused to inspect said locomotive and running board, or ascertain the said unsafe and dangerous condition thereof, and wholly failed, neglected, and refused to keep the said running board in repair, or fit for the purpose of the said employment of this plaintiff; that by reason of said want of inspection, examination, and repair, and willful neglect and carelessness, on the part of the defendant, the said running board at the time aforesaid had become and was unsafe and dangerous to be used by the plaintiff for the purpose of repairing said locomotive as aforesaid, or to be used by him as ordered and directed by said defendant as aforesaid; that at all the times therein mentioned the plaintiff was and is a boiler maker, and had no connection with any repair in or about any woodwork; that on the 3d day of November, 1894, plaintiff went upon said locomotive for the purpose of repairing the same, and went upon said running board, and stood upon the same, and said running board, by reason of its rotten, decayed, unsafe, and dangerous condition aforesaid, gave way and broke while plaintiff was standing thereon, by reason of plaintiff's weight, and plaintiff was precipitated to the ground, a distance of some six feet, falling upon a heap of iron castings, and sustained severe hurts, bruises, etc., pain and suffering, to his damage in the sum of $10,000. The plaintiff also claims certain special damages. Defendant demurred to this complaint, alleging that it did not state facts sufficient to constitute a cause of action.

The principal ground of the demurrer is that the foreman of the shop where the plaintiff was working, according to the complaint, was a fellow servant with the plaintiff. It is claimed, also, that there is no duty owing a machinist in repair shops for the repair of locomotives to furnish him with safe locomotives to work upon, and that he has no right to assume that such a locomotive is all right or sound, or that one part of it should be repaired before another. I know of no rule that exonerates a master from exercising reasonable care in furnishing to a servant in a repair shop a reasonably safe place to work. If he knows that the place where a servant is directed to work is unsafe, I think he should inform the servant of that fact. The duty of exercising reasonable care in furnishing to a servant a reasonably safe place to work is that of the master, and he cannot delegate this duty to a subordinate without placing such subordinate in his own position, and binding him to perform the same duties devolving upon him (the master). McKinney, Fel. Serv. p. 73, § 28. Upon this point the supreme court of the United States, in Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612, used the following language in speaking of the responsibilities of a master:

"One, and perhaps the most important, of these exceptions arises from the obligation of the master, whether a natural person or a corporate body, not to expose a servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master. To that end the master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the lat-

103 F.—27

ter. But it is equally implied in the same contract that the master shall supply the physical means and agencies for the conduct of his business. It is also implied, and public policy requires, that in selecting such means he shall not be wanting in proper care. His negligence in that regard is not a hazard usually or necessarily attendant upon the business. Nor is it one which the servant, in legal contemplation, is presumed to risk, for the obvious reason that the servant who is to use the instrumentalities provided by the master has, ordinarily, no connection with their purchase in the first instance, or with their preservation or maintenance in suitable condition after they have been supplied by the master."

In this case it appears that the running board was not a part of the machinery of the locomotive which the plaintiff was called upon to repair, or the construction of which pertained to his trade or calling. It is alleged that the defendant knew that this running board was defective, and failed to inform plaintiff of that fact. I cannot conceive that this would be considered reasonable care on the part of defendant in furnishing plaintiff with a reasonably safe place in which to work. I therefore hold that the demurrer is not well taken, and it is therefore overruled.