. THE WM. F. BABCOCK.

WALSH *v.* THE WM. F. BABCOCK, Her Tackle, Apparel, etc.

*(District .Court, N. D. California.* June 17, 1887.)

SHIPPING—NEGLIGENCE—LIABILITY FOR PERSONAL INJURY—FELLOW-SERVANT—
INDEPENDENT CONTRACTOR.
The libelant, an employe of the master stevedore, who was loading a vessel under contract, was injured by stepping into a small trimming hatch, in the between-decks, while engaged in storing cargo. The light in the between-decks was dim, and libelant did not know of the existence of the hatch, or that it was uncovered. When the vessel was turned over to the master stevedore to be loaded, this trimming hatch was covered. It was subsequently uncovered by the stevedore's foreman. *Held,* that the vessel was not liable for the injury.

In Admiralty.
*Walter G. Holmes* and *O'Brien & Morrison,* for libelant.
*Milton Andros,* for claimant.

HOFFMAN, J. The libel in this case is filed to recover damages for injuries sustained by the libelant while engaged as a stevedore in lading the cargo of the above vessel. The gang of men to which he belonged was employed in taking cases of salmon on board the vessel, and stowing them in the between-decks, forward of the after-hatch. In the direct course of the men to the place where the cases were to be stowed was a hatch known as a "trimming hatch," which had been partly uncovered. Into this the libelant, who had just come down from the broad daylight on the wharf, stepped his foot, and the case, escaping from his grasp, struck his arm, fracturing or otherwise injuring it. The hatch was perhaps in a somewhat unusual position, being amid-ships, instead of, as is more common with trimming hatches, midway between the mid-ships line and the wings. It was about three and one-half feet square, but it was divided in the center by shifting boards, which were attached to the stanchions of the between-decks. The aperture left on either side of the shifting boards was 2½ feet in length by 12 or 13 inches in width. It was into this aperture that the libelant put his foot.

The usual attempt is made to show that the accident was caused by

the man's own carelessness. It is said that the light in the between-decks was amply sufficient to enable him to see and avoid the hatch, with ordinary care. It is also said that he had freely indulged in beer, and that he, as is said to be usual with stevedores when at work at a late hour of the afternoon, was under its influence. With regard to the light, I am of opinion that it was sufficient to enable any one apprised of the existence and position of the hatch to see and avoid it. I also am inclined to think that, with reasonable care, it might have been avoided by a stranger to the ship, who had been in the between-decks long enough to accommodate his eyes to the diminished light, but not by one ignorant of the existence of the hatch, and who had just come down from the broad daylight. The evidence that the man was sufficiently under the influence of liquor to justify us in attributing the accident to that cause is not satisfactory. If we are asked to infer that such was the case, from the usual habits of stevedores, that fact presents an additional reason why they should not be exposed to injury from traps of this kind, when it is known that their probable condition will prevent them from exercising the care and caution which at an earlier hour of the day they would have observed. The ship was provided with gratings to cover the hatch. It is not shown that any necessity of her service required that it should be left uncovered, either wholly or partially. That there was danger to be apprehended from it, under the circumstances, seems to have been recognized by one of the libelant's comrades, who immediately preceded him in the line of men carrying the cases. He testifies that he thought of warning the libelant of the existence of the hole, but that somehow he forgot to do so. My opinion is that the injury to libelant was caused by negligence other than his own.

Is the ship liable for the consequences of this negligence? The stowing of the cargo was conducted by a gang of men employed and paid by Allen & Young, the well-known firm of master stevedores in this city. The work was performed under the exclusive superintendence of their foreman. There does not seem to have been any crew on board the vessel, nor any officers, except the master, who came down to the ship in the afternoon. But whether or not any of the crew or officers were engaged in the performance of any duties on board the vessel, the taking in and stowing of the cargo was conducted under a contract made by the vessel with the master stevedores, whose servants the men were. There was therefore no privity of contract between the libelant and the master and owners of the ship, nor did the relation of master and servant, in its technical sense, exist between them. But this does not affect the liability of the master and owners, if the former had been guilty of negligence. *The Rheola*, 19 Fed. Rep. 926; *The Kate Cann*, 2 Fed. Rep. 241; 8 Fed. Rep. 719; *The Calista Hawes*, 14 Fed. Rep. 493; *Hough* v. *Railway Co.*, 100 U. S. 220; *Coughtry* v. *Globe*, 56 N. Y. 124; *Mulchey* v. *Methodist Soc.*, 125 Mass. 487.

But if the negligence was not that of the master, but of an independent contractor, or of the stevedore having charge of the loading of the ship, the latter, and not the owners, is liable. *Bennett* v. *Truebody*, 66

Cal. 509, 6 Pac. Rep. 329; *The Victoria*, 13 Fed. Rep. 43; *Dwyer* v. *National S. S. Co.*, 4 Fed. Rep. 493.

At the time the ship was turned over to the stevedores the trimming hatch was completely covered. The deck was also covered with dunnage two inches in height, *i. e.*, inch boards laid on battens one inch high. The master, I believe, (although there is some discrepancy in the evidence on this point,) told the foreman of the stevedores that one inch of dunnage would be sufficient for case goods. He gave no directions that the trimming hatch should be left uncovered. He did not see the boards removed from the hatch, nor did he know that it had been done. All the details of the operation of loading the ship were under the exclusive charge and superintendence of the foreman of the stevedores. If he, in obeying the master's general direction, to the effect that one inch of dunnage would be sufficient, removed the boards which covered the hatch without warning his men of the existence of the hole thus opened, it seems to me that the negligence was his, and not that of the master. The circumstances of this case differ widely from those of the cases to which I have been referred, and most of which are cited in this opinion. In every instance there was manifest negligence on the part of the ship-owners or their servants in failing to provide adequate appliances for discharging or lading the vessel, or in turning her over to the stevedores, with an uncovered and dangerous "trap," in a dark and unusual place. In this case the hatch was uncovered by the foreman of the stevedores. It was his duty either to leave it covered, or, if its removal was necessary to conduct the work, to warn his men of the danger to be apprehended from it; and this seems to be the view of one of the libelant's fellow-workmen, who thought of telling his comrade to beware of the hole, but forgot to do so.

I think that the ship is not liable, under the circumstances, and that the libel should be dismissed.