### BAKER v. PHILADELPHIA & R. RY. CO.

(Circuit Court, E. D. Pennsylvania. January 24, 1907.)

#### No. 48.

**1. MASTER AND SERVANT—DEATH OF SERVANT—NEGLIGENCE—FELLOW SERVANTS—SERVANTS OF SEPARATE MASTERS.**

The C. Railroad, by which decedent was employed as engineer, used the tracks of defendant company for a certain distance entering Philadelphia, and decedent, on approaching the junction with a fast freight, found the tower signal turned against him. He waited six minutes, when a white light was displayed from the tower, signaling his train to proceed, which signal indicated that decedent had the right of way, and that the track to the south was unobstructed. When decedent's train arrived at a point somewhat south of the signal station, it struck the engine and tender of a local freight train belonging to defendant company, which was crossing from the south to the north-bound track, and the engineer of such freight testified that, in violation of the rules, he had been on the south-bound track after cars, without having a man out either ahead or behind his train to guard against accidents. *Held*, that neither the operatives of defendant's train nor the signalman in the tower, all of whom were employed and paid by defendant company, could be regarded as decedent's fellow servants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 484.]

**2. RAILROADS—INJURY TO OPERATIVES—ACCIDENT TO TRAINS—STATE STATUTES—APPLICATION.**

Pub. Laws Pa. 1868, p. 58, provides that when any person shall sustain personal injury or loss of life while engaged or employed on or about the roads, works, depots, and premises of a railroad company, or on or about any train or car therein or thereupon, of which company such person is an employé, the right of action and recovery in all such cases against the company shall be only such as would exist if such person were an employé, etc. *Held*, that such act had no application to an action for the death of an employé of one railroad company while rightfully using the tracks of another, caused by the negligence of the employés of the latter.

**3. SAME—CONTRIBUTORY NEGLIGENCE.**

Decedent, a railroad engineer, on approaching a junction with the tracks of another company which decedent was entitled to use, found the signals turned against him, and thereupon waited until he was signaled by the towerman of the company owning the tracks to proceed, which he did, and immediately collided with a train belonging to the latter company negligently on the track. *Held*, that decedent was not negligent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 941.]

**4. DEATH—BURDEN OF PROOF.**

In an action for death of a railroad engineer, the burden is on the defendant to show that deceased was negligent, and that his negligence contributed to the injury resulting in his death; it being presumed, in

the absence of evidence to the contrary, that decedent exercised proper care in order to protect his own life.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, §§ 75, 76.]

5. SAME—DAMAGES—EXCESSIVENESS.

Decedent, a railroad engineer, 25 years of age, in good health, industrious, and of good habits, was killed through defendant's negligence. Decedent was earning from $100 to $130 a month, most of which he gave to plaintiff, his mother, who was about 54 years of age. There was also evidence that decedent was thrifty and careful in matters of expenditure. *Held*, that a verdict awarding plaintiff $7,500 was not excessive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 125.]

Charles H. Edmunds, for plaintiff.
Gavin W. Hart, for defendant.

HOLLAND, District Judge.    The Central Railroad of New Jersey was using the tracks of the Philadelphia & Reading Railway Company from Bound Brook to Berks streets, in the city of Phildelphia, by an arrangement, the exact terms of which did not appear.    On the morning of September 9, 1905, the plaintiff, Henry K. Baker, an engineer, was in charge of a fast freight of the Central Railroad Company approaching Philadelphia.    Upon arriving at Tabor Junction at about 2:34 o'clock on the morning of that day, the train was stopped by the display of a red danger signal in the tower, manned by an employé of the Reading Railway Company.    Six minutes later a white light was displayed from the tower, signaling the train to proceed, and, under the rules, the engineer had a right to assume the south-bound track was unobstructed, and he was authorized, and in fact required, to proceed.    When his train arrived at a point somewhat south of the signal station, he struck the engine and tender of a local freight belonging to the Reading Railway Company, which was crossing over from the south-bound to the north-bound track as Baker's train was passing.    The Reading Railway's freight engine had no right to be at that point.    The engineer (King) of this engine testified that, in violation of the rules, he had been on the south-bound track after cars without having a man out either ahead or behind his train to guard against accident.    The rules governing the running of trains on both roads were uniform, and issued in accordance with the rules adopted by the American Railway Association.    Rules 99 and 100 were the same for both companies. The employé in the tower who gave the signal and the train crew of the Reading Railway Company were employés of the Philadelphia & Reading Railway Company; the train crew of the Jersey Central were employés of the latter company.    The jury was, in substance, instructed that the man in the tower and the Reading Railway Company's crew were not fellow servants of the crew in charge of the Central Railroad Company's train, and that if the former, or either of them, were negligent, as a result of which the death of the plaintiff's son was caused, she would have a right to recover, and the court refused to instruct the jury, at the request of the defendant, that the case was governed by the statute of the state of Pennsylvania passed April 4, 1868, and further refused to instruct the jury that—

"Even though the decedent was technically upon the road of his employers, to wit, the Central Railroad of New Jersey, it was their duty to supply him

with safeguards as the occasion demanded; and, having supplied him with Reading Railroad employés, they must be considered as Central Railroad employés, and that the defendant would not be liable in this suit; and further, that the towerman was a part of the means by which the train was enabled to run, and he must be considered as one of the employés necessary to move the train, and, no matter by whom employed, he was in law a co-employé of decedent."

Under the common law, the master is not responsible for injuries received by his servant as a result of the negligence of a fellow servant engaged in the same common employment; but all the authorities are to the effect that, in order that this rule may apply, the servant whose negligence caused the injury must be an employé of the same master of the employé injured. Servants of different masters are not deemed to be fellow servants, within the meaning of this rule, although they are working together in the same common employment; they must all be under the control and direction of a common master. Coates v. Chapman, 195 Pa. St. 109, 45 Atl. 676; Crawford v. Wells City (D. C.) 38 Fed. 47; Central Railroad Co.. v. Stoermer, 51 Fed. 518, 2 C. C. A. 360; The Wm. F. Babcock (D. C.) 31 Fed. 418; Thompson's Commentaries on Law of Evidence, §§ 4846, 4996. This seems to be the law as laid down by most courts of last resort in the United States, as the collation of cases on this question found in Thompson's Commentaries, supra, will show. Servants of different railway companies, using the same tracks, are not fellow servants, so as to relieve the employer from injuries negligently inflicted by its employés upon the employés of the other company. Numerous cases cited in Thompson's Commentaries, §§ 4998, 5000, illustrate this principle.

It is contended by the defendant that the case is covered by the statute of the state of Pennsylvania passed April 4, 1868 (P. L. 58), as follows:

"Section 1. When any person shall sustain personal injury or loss of life while lawfully engaged or employed on or about the roads, works, depots and premises of a railroad company, or on or about any train or car therein or thereupon, of which company such person is an employee, the right of action and recovery in all such cases against the company shall be such only as would exist if such person were an employee. Provided, that this section shall not apply to passengers."

The application of this act of 1868 to cases such as the one at bar has been, in our judgment, finally settled by the decision of the Supreme Court of Pennsylvania in the case of Keck v. Philadelphia & Reading Ry. Co., 206 Pa. St. 501, 56 Atl. 47. The facts of that case and the one here are entirely similar, with the sole exception that there was in the Keck Case no towerman to signal Keck that his track was clear for him to proceed. The Keck Case arose out of the death of the plaintiff's husband, who was an engineer on the Central Railroad of New Jersey, using the tracks of the Reading Railway Company, and was killed by running into one of the latter's trains negligently upon the track, which the Central Railroad train had a right to use at the time. Judge Mitchell, in deciding the Keck Case, reviewed all the previous decisions of the Supreme Court of Pennsylvania in which this act of assembly was considered, and held that the rules to be deduced from these cases are as follows:

"First. Where the same track is used by two railroad companies, it must be considered for the application of the act of 1868 as the property of each while using it. Secondly. Whether the use be by virtue of joint or several ownership, charter right, lease, license, or traffic agreement, is immaterial. Thirdly. To bring the case within the second class distinguished in Spisak v. B. & O. R. R. Co., 152 Pa. St. 281, 25 Atl. 497 (namely those where the employment is ordinarily the duty of railroad employés), the plaintiff must not only be engaged in such work, but also be so engaged for or upon the property of the railroad by whose negligence he is injured. Thus in the present case (Keck Case) the plaintiff's husband was engaged in railroad work as locomotive engineer, but not for the defendant, nor upon premises which were to be treated as defendant's at that time. He was therefore not within 'the act. [The exact situation in the case at bar.] Fourthly. In such cases the employés of each road accept the risks of their employment in regard to their own road, but not those incident to the operation of the other road, unless at the time engaged in some work for the other or for both roads jointly."

The defendant, however, urged that the towerman in displaying the red signal to stop the New Jersey Central train and the white light to go ahead was performing labor as an employé of the Jersey Central, because at the time the southbound was the track of the Jersey Central, and the signaling of the towerman for the Jersey Central train to use it was the work of a Jersey Central employé for the time, notwithstanding the fact he was paid and was an employé of the Reading Company. This position we regard as untenable. As we have shown, the act of 1868 does not apply, and there is no decision of any court, either in Pennsylvania, this district, or in any other state, that has been called to our attention, where the rule that employés of different masters are not fellow servants in cases of injury to one or the other has been modified to the extent claimed by the defendant, nor can we see why such modification should be permitted in this case. There is no more reason for holding that the signaling of a towerman to a Jersey Central train should transfer him from that of an employé of the Reading to that of an employé of the Jersey Central than that the signaling of a member of a Reading crew to a train crew of the Jersey Central should transfer the former from a Reading employé to a fellow servant of the latter; and if it be held that in either case the person signaling the Jersey Central train is for the time thus transferred, then it would seem to me that the rule in negligence cases, where there are different employers, would be practically inapplicable to most cases where the same tracks are being used by different railroads, because the running of trains in accordance with the rules, and with a view of the safety of the employés and the general public, constantly involves a reciprocal dependence of the employés of one road upon the employés of the other for signals and other information; and there can be few cases of this kind (of the negligent injury of the employés of one company by the employés of the other) without being able to show it was the duty of the negligent party to have performed some act of signaling or warning to the injured employé. If it could be said that in the cases where the duty of the employés of one company in furnishing any signal or information to the employés of the other that the performance of this duty transfers the performer into the employment of the other company, then it must be held the rule no longer applies to different railway companies using the same tracks. This view would be in direct conflict with the authorities.

The court, in effect, expressed the opinion to the jury that there was no evidence in the case from which they could infer that Baker had contributed toward the accident by any negligence on his part. The language used with reference to this point in the charges is as follows:

"There is no evidence that he did not proceed carefully; but, at any rate, he proceeded, and when he got some distance beyond the signal tower toward Philadelphia, he struck a shifting engine, and his engine was overturned, and he was killed."

Also, at another part of the charge the court said:

"There is no evidence here to show that there was any negligence on the part of Henry K. Baker in running that train, but there is evidence that he was going at the rate of fifteen miles an hour. One of the witnesses said that six miles an hour was about the speed they could go at that place. Another witness said they had a right under the circumstances, if they felt like it, to run a hundred miles an hour; that they had been given the white light, and had a right to go ahead. Is there any evidence from which the inference could be drawn that Henry K. Baker was negligent in the way and at the speed he ran his train?"

We are of the opinion that the court was entirely right in its instruction to the jury that there was no evidence of contributory negligence on the part of Baker. It is undisputed that Baker had the right of way as against the local freight of the Reading Railway, which was unlawfully on his track; that he had been signaled from the tower to proceed, and it was his duty to do so. It is further proven by uncontradicted evidence of King, the engineer of the Reading Railway engine, that he was unlawfully on the south-bound track, without a flagman out to warn approaching trains, so that Baker was entitled to proceed with his train upon the assumption that the south-bound track was unobstructed, and that he was privileged to proceed at a rate of speed usual at that point. There was some evidence as to the rate of speed he was going, but it was very indefinite. Thatcher, the brakeman on the Central Railroad train, said he judged the speed to be about 15 miles an hour. King, the engineer of the Reading Railway train, testified the accident occurred in the yard limits, and that 6 miles an hour was the speed permitted there, and the rules required trains to be kept under control. The defendant has not pointed to any regulation in the book of rules prescribing the speed at which a train can run in yard limits, and 15 miles an hour is not such a speed as to raise any presumption of negligent running. It is true King further stated that there was some regulation about running trains 6 miles an hour, under-control, in yard limits. He, however, said it was simply a regulation, and was vague as to who authorized it, or by what authority it was required to be observed. He did not say it was in the book of rules, nor did he claim it was a regulation that had been brought to the notice of any of the train crew of the Central Railroad of New Jersey. If there was any negligence on the part of the plaintiff, it could easily have been shown, but the defendant elected to stand upon the evidence of the plaintiff, and in that there is nothing from which the inference could be drawn that Baker was at all negligent at the time this accident occurred.

The burden of proof is on the defendant to show that the deceased

was negligent, and that his negligence contributed to the injury which resulted in his death. Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; Hough v. Railroad Co., 100 U. S. 213, 25 L. Ed. 612. This rule governs in the United States courts irrespective of the decisions in courts of the state where federal courts are held. 2 Foster's Federal Practice (2d Ed.) p. 880, § 375. In the absence of all evidence on the subject, it would be presumed that the deceased exercised proper care, for he had the greatest incentive to caution, in order that he might protect his own life. Improvement Co. v. Stead, 95 U. S. 165, 24 L. Ed. 403. On all the evidence, the rule of the federal courts is that the burden of proof is on the defendant to sustain, by a preponderance of evidence, its defensive plea of contributory negligence. Railroad Co. v. Mares, 123 U. S. 717, 8 Sup. Ct. 321, 31 L. Ed. 296.

There is a further objection that the amount awarded is excessive. Henry K. Baker was not more than 25 years of age, in good health, good habits, industrious, and an esteemed and valuable employé. He was earning from $100 to $130 per month, most of which he gave to his mother, as he was thrifty and careful in matters of expenditure. Her income, therefore, was very close to $1,000 per year. She was about 54 years of age, and while it could not be affirmed that her income from this source would continue for the remainder of her life, yet this was her only source of maintenance, and from the disposition and habits of the young man the jury had a right to assess an amount equal to the value of his life to her in the way of income, based upon what he was giving her at this time, as modified by what he would continue to contribute during the entire period of her probable existence. There is no rule by which we can arrive with any certainty at a sum to exactly compensate one damaged in the loss of a son, as the plaintiff in this case is, and there is no doubt a wide difference of opinion as to what is and what is not excessive. This verdict of $7,500, in my judgment, is not so obviously excessive as to require the court either to grant a new trial or to interfere with the amount awarded.

Reasons for a new trial and in arrest of judgment are overruled.