## THE ST. GOTHARD.

(Circuit Court of Appeals, Second Circuit. April 3, 1907.)

### No. 231.

SHIPPING—STEVEDORES—INJURIES—NEGLIGENCE OF SHIP.

> Plaintiff, a stevedore engaged in unloading bags of sugar from the hold of a vessel, was injured by the falling of a sling caused by the breaking of the rope fall as the sling caught under the coamings of the between-decks hatch. The fall provided for use at such hatch was made of wire, but shortly before the injury the stevedores not employed by the ship had substituted the rope fall in order to use the wire fall at another hatch. The rope was a four-inch one, and, if properly used and inspected, was fully capable of the work in hand. The ship had also provided an abundance of spare falls, both wire and rope, which were at the service of the stevedores whenever any fall indicated that a change was required, and the ship's officer, on noticing the change, asked concerning it, and the foreman replied that the wire fall was wanted elsewhere, and that the rope was quite good to lift anything they wanted to lift. *Held*, that the ship was not negligent nor responsible for the breaking of the rope.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 350.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree of the District Court (149 Fed. 790) holding the steamer liable for injuries sustained by the libelant, who was working upon her as a longshoreman.

J. Parker Kirlin and Charles R. Hickox, for appellant.

Lorenzo Ullo, Albert M. Yuzzolino Ullo, and Ruebsamen & Yuzzolino, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The main facts of the case are set forth in the opinion of the district judge as follows:

"The vessel in its charter party agreed to furnish tackle for loading and discharging cargo. At each hatch a fall was provided to lift the cargo (bags of sugar) from the hold, and, save at the bunker hatch, there was another fall to carry out-board and deposit it on the dock. All falls of the first class were made of wire, and all of the second class were made of rope. At the spare bunker hatch but one fall was used, and that was made of wire. The ship discharged a part of her cargo at Yonkers, and then went to Arbuckle's dock in New York, where, after the work had begun, the stevedores not employed by the ship substituted the rope fall of No. 3 for the wire fall at the spare bunker hatch, for the probable reason that the wire fall was on account of greater length more available at No. 3 hatch. The libelant, a longshoreman employed by the Arbuckle company, was in the hold under the spare bunker hatch making up the slings. As a sling containing five bags was rising, it caught under the coamings of the between-decks hatch, and thereupon the rope broke and the sling fell upon libelant's knee, causing serious injury. Some portion of

the rope was produced in court on the trial April 4, 1906, and as it then appeared was unfit for the purpose of a fall. The rope had been used somewhat since the accident, which was October 9, 1905. * * * The sling came into contact with the coaming. The winch continued to work and the rope broke. * *. * The hatch was 14 feet athwartship and 5 feet 6 inches fore and aft, and through this opening in rapid discharge of cargo the sling was taken. The collision with the coamings at times was expectable, and a fall was required that should withstand reasonably the shock of such contact. To meet this demand the ship had provided and rigged wire falls, and the stevedores had for their own convenience substituted the rope."

The district judge held the ship liable because it did not "use suitable care to furnish falls that would meet the duty that the stevedores would allot to them, and because "both the stevedore's foreman and the ship's officer were negligent in allowing the rope to be used."

We are unable to concur in this conclusion. Besides the facts above set forth others appear in the record, either undisputed or established by the fair weight of evidence. First as to the rope. The expert witness called by libelant testified that a new four-inch fall such as the one in question, if used for lifting cargoes from the deck of a vessel over the side where the rope does not come in contact with any sharp or hard surface, would have a life of from 30 to 36 hours; that if used for hoisting cargo from under deck, where it is being constantly exposed to chafing over the sides of the hatch, and to sudden strains as a sling catches under the hatch, it ought not to be used over 15 hours. And he added:

"It all depends on how the rope is used. I have seen some rope that wouldn't last three hours with the gang of men aboard that boat."

There is evidence that for a considerable time the stevedores used this fall to lift out five bags to a sling, instead of four, although cautioned not to do so. The extra weight is not important; but, since five bags made the draught more bulky, the chances of catching under the hatch were greater. Moreover, there is evidence to show carelessness in guiding and in directing the hoisting, so that such catching with consequent sudden strain on the rope was increased. The fall had been in such use four or five hours before the accident. To whatever extent use subsequent to the accident had deteriorated it, it is manifest that its condition on the trial was considerably different from what it was when the stevedores substituted it for the wire fall which would have stood the chafing and the strains for a vastly longer period. There is not a particle of evidence to show that if left where the ship had placed it, to serve in lifting cargo from the deck to the dock, it was not in perfectly proper condition to complete the discharge of all this cargo.

The ship had also provided an abundance of spare falls, wire and rope both, which were at the service of the stevedores whenever the appearance or the use of any fall indicated that reasonable prudence required a change. Where a ship supplies proper falls for unloading cargo, with an abundant supply to take the place of such as show signs of wearing out during the operation, all at the disposal of the stevedores, the authorities do not sustain the proposition that she is to be held in fault because the stevedores make improper use of such appliances. When she has done this, she has used suitable care to fur-

nish falls that would meet the duty that the stevedores would be expected to allot to them. The facts in the case at bar differentiate it from those cited by libelant. In The Kate Cann (D. C.) 2 Fed. 246, dunnage improperly stowed by the crew broke away. In The Edith Goddon (D. C.) 23 Fed. 43, an insufficient derrick, under the disadvantageous condition of a very rough sea, was used by the ship's officers to lower away a long boat. In The Carolina (D. C.) 30 Fed. 199, the guy rope which broke had been rigged in the place where it was put to use by the ship's officers, who were held guilty of negligence when they "permitted it to be used after its insufficiency had been decided by its breaking." In The Tresco, 134 Fed. 819, 67 C. C. A. 465, a defective splice in a wire cable, concealed by a tarred twine serving, gave away, and the cable, which was taken from another ship and had not been carefully inspected, was rigged by the ship for the service for which it was being used. In The William Branfoot (D. C.) 48 Fed. 914, the accident was the fall of an iron stanchion supporting the between-decks. In The Nebo (D. C.) 40 Fed. 31, a crossbeam supporting a platform made by the mate and carpenter to aid in discharging cargo gave way. In Coughlin v. The Rheola (C. C.) 19 Fed. 926, the chain which broke was supplied by the ship for the purpose for which it was being used. In The William F. Babcock (D. C.) 31 Fed. 418, there was an improperly protected hatch. In Cliffe v. Pac. Mail S. S. Co. (C. C.) 81 Fed. 809, a defective manhole cover on deck. In Lowndes v. The Phenix (D. C.) 34 Fed. 760, the mate upon request, furnished the rope sling for the very use to which it was put. In The Alejandro, 56 Fed. 621, 6 C. C. A. 54, the "general management of the work on hand was under direction of the officers of the vessel," who put the rotten rope to the use in which it broke. Libelant has quoted from the decision of this court in The King Gruffydd, 131 Fed. 189, 65 C. C. A. 495. In that case the stevedore's men were raising a heavy skid from a lighter. The boom was held by a wire cable known as a "topping-lift," which extended from the end of the boom to a block on the mast. The skid caught on the side of the vessel, and, the winch not stopping, the topping-lift broke close to the eye. The boom was rigged by the stevedores, not by the ship, and an ample supply of gear and tackle for such rigging was furnished by the ship. Such supply of rigging included chains as well as wire rope in proper lengths for use as "topping-lift," and the ship sought to escape liability because the stevedore's men, with rigging before them (the chains) which would have stood the strain, selected rigging (the wire) which would be likely to break if the load caught. That contention, however, was found by the court to be without merit, because the evidence showed that a wire topping-lift was as safe for the purpose as a chain. It appeared that the utmost lifting capacity of the engine was only 3 tons, while a wire cable of the size used, if in good condition, would lift easily 20 tons. The ship was held liable because the splice near the eye of the cable had become weakened by the corrosive action of rust, a condition which would have been apparent if the "service" of bagging and spun yarn had been removed when the ship's officers made their regular inspections. We did not hold that it was necessary to remove such "service" at

every inspection, but that the cable in question had been so handled, being left exposed in the rigging when at sea, instead of being housed in some warm, dry place, that the ship's officers were bound to anticipate that its life was nearing an end, and that its weakest point (the splice) "should have been subjected to some periodic examination and renewal of the oiled service which was intended to protect it." The King Gruffydd is a very different case from the one at bar, where there is no proof of unfitness for the purpose to which the fall was appropriated, and where the stevedores remove a wire fall manifestly impervious to chafing and substitute a rope one which they knew would rapidly deteriorate under the hard usage to which they thereafter expose it.

The facts in Jeffries v. De Hart (Third Circuit) 102 Fed. 765, 42 C. C. A. 615, are similar to those in the case at bar. The stevedores themselves selected from the ship's tackle what rigging they preferred, and the ship was held not to be in fault because their selection turned out to be improvident.

The conclusion of the district judge that both the stevedore's foreman and the ship's officer were negligent is based solely upon the circumstance that the mate, about 10 a. m., some time after the substitution, noticed that the change of rope for wire had been made and asked the foreman the reason for it. The reply was that they wanted the wire for aft, and that the rope was quite good to lift anything they wanted to lift. This is not sufficient to hold the ship in fault. For aught that appears, the rope was perfectly good if it were used carefully and overhauled from time to time to see if it was being chafed by use.

The decree is reversed, with costs of this appeal, and cause remanded, with instructions to dismiss the libel.