CARTAGENA, DEMANDANTE Y APELADO, *v.* MAYAGÜEZ LIGHT & ICE COMPANY, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en un caso sobre indemnización de daños y perjuicios.

No. 1069.—Resuelto en julio 18, 1914.

RESPONSABILIDAD DE PATRONOS—DEFECTO EXISTENTE EN LAS MÁQUINAS DEL PATRONO—CAUSA NECESARIA Y UNICA DEL ACCIDENTE.—Cuando, como en el caso de autos, se prueba que el demandante trabajaba como maquinista en la fábrica de la demandada desde hacía varios años, siendo una de sus obligaciones la de arreglar los desperfectos del freno de la máquina, y el accidente que ocasionó la lesión al demandante no ocurrió mientras la máquina

estaba funcionando porque el freno, por ejemplo, saltara o se rompiera, sino mientras el demandante estaba arreglando el desperfecto del freno, no puede concluirse que el accidente sea la consecuencia necesaria y única de algún defecto existente en la máquina de la demandada, dentro del significado de la vigente ley sobre responsabilidad de patronos.

ID.—ASUNCIÓN DEL RIESGO POR EL EMPLEADO—DEFECTO EXISTENTE EN LAS MÁQUINAS DEL PATRONO—MAQUINISTA ENCARGADO DE ARREGLAR DICHO DEFECTO.— Cuando, como en el caso de autos, el desajuste del freno de la máquina de la demandada existía desde su instalación en el año de 1895 y desde esa misma fecha trabajaba el demandante en dicha máquina conociendo dicho defecto y asumiendo voluntariamente la obligación de corregirlo, sin que conste en forma alguna que llamara especialmente la atención de la demandada acerca de que al ajustar el freno en la forma en que se venía haciendo durante tantos años, peligrara su vida, o estuviera expuesto a sufrir alguna lesión corporal, y que la demandada prometiera reparar el defecto totalmente, y que el accidente ocurriera durante un período de tiempo que permitiera razonablemente deducir que el demandante había continuado trabajando en la creencia de que la demandada remediaría el defecto, es necesario concluir que aceptó voluntariamente el riesgo de su empleo y debe estar y pasar por las consecuencias de sus propios actos.

Los hechos están expresados en la opinión.

Abogados del apelado:_Sres. *N. B. K. Pettingill, Benjamín J. Horton* y *Fernando Vázquez.*

Abogado de la apelante: Sr. *Leopoldo Feliú.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un pleito sobre indemnización por daños y perjuicios. Archivadas las alegaciones de ambas partes y celebrada la vista, la Corte de Distrito de Mayagüez dictó sentencia, el 9 de mayo de 1913, condenando a la compañía demandada a pagar a su empleado el demandante la suma de mil pesos, como indemnización por los daños y perjuicios que sufriera en el accidente descrito en la demanda, y, además, al pago de las costas y de los desembolsos y honorarios de abogado.

La corte sentenciadora, basándose en la evidencia practicada, declaró probados los siguientes hechos:

"Que la demandada Mayagüez Light and Ice Co., es una compañía incorporada según las leyes de Puerto Rico, con el fin, entre otras cosas, de fabricar luz y fuerza en la ciudad de Mayagüez, en la cual

mantiene una planta eléctrica para el servicio del alumbrado público. Que el demandante Cándido Cartagena estuvo trabajando en la planta eléctrica de la demandada en esta ciudad de Mayagüez, desde la fundación de la misma, la que está funcionando desde el año 1895.

"Se ha probado también que la planta eléctrica a que se refiere la demanda es propiedad de Don Ramón Valdés. Además se ha probado que el demandante Cándido Cartagena, quien había estado trabajando en dicha planta desde su fundación, el día 8 de marzo de 1911, trabajaba como maquinista en la planta eléctrica establecida en esta ciudad de Mayagüez, en la calle de la Candelaria y propiedad de la demandada; que estando dicho día 8 de marzo de 1911, por la mañana, arreglando los cuñeros de los frenos de la máquina número dos, saltó un pedazo de hierro del casquillo que lleva el freno del cuñero de dicha máquina número dos, dándole un fuerte golpe al demandante en el ojo izquierdo que le ocasionó grandes dolores físicos y le obligó a guardar cama y estar impedido de trabajar absolutamente durante cuatro meses después del accidente, habiendo perdido por completo la visión del referido ojo izquierdo y encontrándose todavía parcialmente inhabilitado para trabajar de su oficio con el cual libraba su subsistencia, habiendo además experimentado fuertes dolores físicos y gastando algunas sumas de dinero tratando de obtener su curación.

"También se ha probado que dicho demandante Cándido Cartagena, ganaba en su empleo como tal maquinista, cuando estaba empleado con la demandada, y hasta la fecha del accidente, una suma de sesenta dollars mensuales.

"Según aparece probado por las declaraciones de testigos, tanto del demandante como de la demandada, el freno o *clutch* de la máquina número dos referida, desde su instalación en dicha máquina número dos, ha sido defectuoso, pues siempre, según declaró el testigo Pastor Carrero, de la demandada, dicho casquillo ha estado desajustado desde que está formando parte de dicha máquina y siempre tienen que entrarlo a golpes de martillo.

"En relación con este punto, se ha probado que, como se deja dicho antes, el *clutch* o freno ha estado siempre desajustado cuando la máquina todavía no pertenecía al actual dueño Don Ramón Valdés y que a pesar de haber sido advertido, como se ha probado que lo ha sido, dicho defecto, después de haber pasado la maquinaria o planta eléctrica a poder de la Mayagüez Light and Ice Co., no ha sido remediado en la forma propia y adecuada por la demandada, por el señor Ramón Valdés, dueño de la planta, ni por ninguna persona por orden de la demandada.

"Se ha probado satisfactoriamente, que en la época del accidente era superintendente y administrador de dicha planta el señor don Wenceslao Sifre, puesto allí con tal obligación y deber y encargado por la demandada o por su propietario Don Ramón Valdés. Que dicho superintendente señor Sifre, venía a la planta dos veces al día y una vez por la noche a inspeccionar la planta y ver su funcionamiento. Que todas las mañanas se le pasaba un report por el maquinista de guardia al superintendente o administrador señor Wenceslao Sifre de todos los arreglos o reparaciones que había que hacer inmediatamente en la referida planta eléctrica. Que en varias y repetidas ocasiones, según está probado suficientemente, el casquillo del freno o *clutch* se zafaba y había que entrarlo a su sitio a golpes de martillo. Esto resulta probado tanto por los testigos del demandante, como por los de la demandada, incluyendo el mismo ingeniero que actualmente está encargado de la dirección de dicha planta.

"A mayor abundamiento, el testigo Pastor Carrero, testigo traído por la demandada y que actualmente es maquinista de la planta eléctrica, declaró, y es un hecho probado, que desde que la planta eléctrica pertenece a la demandada Mayagüez Light and Ice Co., se ha arreglado el casquillo del *clutch* o freno como ocho a diez veces.

"También se ha probado que la obligación del maquinista—y el demandante, Cándido Cartagena era maquinista en dicha planta— era, entre otras cosas, arreglar esos desperfectos del freno y del casquillo."

Y la dicha corte sentenciadora, después de declarar probados los anteriores hechos, llegó a las siguientes conclusiones en las cuales basó la sentencia a que nos hemos referido. Dichas conclusiones, copiadas a la letra, son así:

"1. Que el demandante ha experimentado daños de bastante consideración con motivo del accidente origen de este pleito.

"2. Que el demandante, al recibir dichos daños, estaba ejercitando en su trabajo el debido cuidado y diligencia.

"3. Que los daños causados al demandante, lo fueron por el defecto de la máquina número dos, usada en la planta eléctrica, cuyo defecto era conocido y no fué remediado debido a la negligencia del patrono o de su superintendente señor Wenceslao Sifre, quien, se ha probado, estaba encargado de la superintendencia de la planta eléctrica como su solo y principal deber.

"4. Que el daño fué debida única y exclusivamente a la negligencia de la demandada, The Mayagüez Light & Ice Company."

El abogado de la parte demandada y apelante especifica y argumenta en su alegato once errores. Prescindiremos de considerar los diez primeros, y atendidas las circunstancias concurrentes, limitaremos nuestro estudio al último que abarca la totalidad del caso y que es como sigue: "La sentencia dictada por la corte no está ajustada a la prueba, ni apoyada por ésta, ni tampoco está de acuerdo con la ley."

Hemos examinado cuidadosamente la prueba practicada y, a nuestro juicio, ha sido apreciada rectamente por el tribunal sentenciador. La cuestión a resolver es la de si los hechos declarados probados, sostienen o no las conclusiones de la corte de distrito, y, por ende, la sentencia apelada.

Examinaremos primero el caso a la luz de la ley relativa a la responsabilidad de los patronos, por accidentes que, en su servicio, sufran sus empleados, aprobada el 1 de marzo de 1901. La sección 1 de dicha ley y 322 de los Estatutos Revisados de 1902, prescribe que existirá entre otros casos el derecho de reclamar indemnización al patrono, cuando resulte lesión corporal a un empleado que esté ejercitando en su ocupación el debido celo y diligencia, por causa de cualquier defecto en las máquinas que se usen en relación con la empresa del patrono, y el daño fuere originado, o no descubierto, o no remediado por la negligencia del patrono, o de cualquier persona a su servicio a quien hubiere confiado el deber de que dichas máquinas estuviesen en buen estado.

Existe en este caso, de acuerdo con los hechos declarados probados por la corte sentenciadora, la relación de empleado y patrono entre demandante y demandado, y se probó también que el empleado recibió una lesión corporal mientras se encontraba ocupado al servicio del patrono. Hasta aquí todos los requisitos que la ley exige para que pueda reclamarse la indemnización, han ocurrido, pero ¿se debió el accidente a algún defecto existente en las máquinas del patrono?

Según la prueba, tal como ha sido apreciado por la corte sentenciadora, el freno o *clutch* de la máquina de la demandada ha estado desajustado desde su instalación en el año

de 1895, y ha habido siempre que ajustarlo a fuerza de golpes de martillo. También, según la prueba, el demandante Cándido Cartagena trabaja en la máquina de la demandada desde 1895, siendo una de sus obligaciones como maquinista arreglar precisamente los desperfectos del freno. Y finalmente, según la prueba tal como ha sido apreciada por el tribunal sentenciador, el accidente que ocasionó la lesión al demandante no ocurrió mientras la máquina estaba funcionando, a consecuencia, por ejemplo, de que el freno saltara o se rompiera; sino mientras el demandante estaba arreglando el desperfecto del freno. Siendo esto así, no puede concluirse que el accidente sea la consecuencia necesaria y única del desperfecto existente en la máquina de la demandada, aun suponiendo que el desajuste del freno de que se trata, atendidas las circunstancias concurrentes, pueda considerarse como uno de los defectos a que se refiere la ley relativa a la responsabilidad de los patronos.

Y si examinamos el caso a la luz de los preceptos generales del derecho y aplicamos la doctrina de la asunción del riesgo, procede también que el mismo se decida en contra del demandante. Como hemos dicho, el desajuste del freno de la máquina de la demandada existía desde su instalación en el año de 1895, y desde esa misma fecha trabaja el demandante en la máquina que es hoy de la propiedad de la demandada. El demandante, pues, conocía el defecto por espacio de muchos años y cuando llegó a ser maquinista, asumió voluntariamente la obligación de corregirlo. No consta en forma alguna que el demandante llamara especialmente la atención de la demandada acerca de que al ajustar el freno en la forma en que se venía haciendo durante tantos años, peligrara su vida o estuviera expuesto a sufrir alguna lesión corporal, que entonces la demandada prometiera reparar el defecto totalmente y que el accidente ocurriera durante un período de tiempo que permitiera razonablemente deducir que el demandante había continuado trabajando en la creencia de que el demandado remediaría el defecto. *Aré et al.* v. *Borinquen Sugar*

*Co.,* 17 D. P. R., 923, 926; *Hough* v. *Railway Co.,* 100 U. S., 225. Por el contrario aparece que si el demandante estimó que su labor era peligrosa, es lo cierto que la aceptó voluntariamente y que debe estar y pasar en tal virtud por las consecuencias de sus propios actos. Véanse las decisiones de esta Corte Suprema en los casos de *Claudio* v. *Cortínez,* 9 D. P. R., 108, 119, y *Pérez* v. *The Yabucoa Sugar Co.,* 15 D. P. R., 214, 220.

La Corte Suprema de Massachusetts en el caso de *O'Maly* v. *South Boston Gas Light Co.,* 158 Mass., 135, 136, se expresó como sigue:

"La doctrina relativa al riesgo que asume un empleado por virtud de su empleo, generalmente ha sido considerada desde el punto de vista de un contrato, expreso o tácito; pero aplicada a las acciones de daños por negligencia establecidas contra un patrono, tal doctrina nos lleva a la consideración de otro principio más amplio contenido en la máxima legal *Volenti non fit injuria,* esto es, que aquél que consiente no puede alegar que ha recibido perjuicio. La persona que conociendo y apreciando el peligro asume voluntariamente el riesgo del mismo, no tiene justa causa de acción contra otra que es responsable en primer término de la existencia de dicho peligro. En lo que a ambos respecta, el hecho de asumir uno voluntariamente el riesgo releva al otro de cualquier obligación en que estuviera para con él, en ese sentido, y cada uno asume el riesgo que pueda haber en el caso, sin derecho alguno a reclamar nada del otro. En tal caso no existe negligencia procesable por parte de aquel que es responsable en primer lugar por el peligro que exista. Si de acuerdo con los más altos principios morales, pudiera sostenerse que ha dejado de cumplir con su deber, no existe, sin embargo, en lo que a las partes concierne, negligencia alguna en el cumplimiento de algún deber legal."

Apreciando, pues, los hechos y aplicando la ley tal como ha sido interpretada por los tribunales, nos vemos obligados a revocar la sentencia apelada. El presente caso podría servir de fundamento a los que sostienen la necesidad de una reforma radical en los principios que regulan las indemnizaciones por accidentes del trabajo. Pero mientras tal reforma no se realice, nada pueden hacer las cortes cuyo minis-

terio consiste en resolver los casos de acuerdo con la ley que
esté en vigor.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciados Wolf y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tri-
bunal en la vista de este caso.